# Illinois Official Reports

## Appellate Court

---

### *In re Jovan A.*, 2014 IL App (1st) 103835

---

| | |
|---|---|
| Appellate Court Caption | *In re* JOVAN A., a Minor (The People of the State of Illinois, Plaintiff-Appellee, v. Jovan A., a Minor, Respondent-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-3835 |
| Opinion filed<br>Opinion withdrawn<br>Opinion filed | September 19, 2013<br>February 7, 2014<br>February 13, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent's delinquency adjudication and sentence based on his theft of a triathlon bicycle were reversed and the cause was remanded for a new trial on the ground that the trial court erred in relying on the hearsay testimony of a detective and the person who had the bicycle taken from a rack on her car after borrowing it from a friend concerning a craigslist.org posting offering the bicycle for sale, since the detective's testimony went beyond the course-of-investigation exception, which would have allowed the detective's testimony if it was limited to the steps he took in investigating the offense and did not go beyond explaining his actions, and the person who had the bicycle taken from her car was not a police officer and her testimony was inadmissible hearsay; furthermore, based on the trial judge's heavy reliance on the hearsay testimony, the error was not harmless. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-JD-3836; the Hon. Lori Wolfson, Judge, presiding. |
| Judgment | Reversed and remanded for further proceedings. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, Michael G. Soukup, and Peter Sgro, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Amy M. Watroba, and Anne L. Magats, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Justice Lavin concurred in the judgment and opinion. Justice Pucinski dissented, with opinion. |

**OPINION**

¶ 1    Following a bench trial, Jovan A. was adjudicated delinquent and sentenced to 18 months' probation. Respondent contends on appeal that the trial court improperly relied on hearsay, specifically, the content of a craigslist.org advertisement, to find that he committed theft.[1] For the reasons that follow, we reverse respondent's conviction and remand this cause for further proceedings.

¶ 2                                    BACKGROUND

¶ 3    Lori Bravi testified that she borrowed a Cervelo P2C triathlon bicycle from Elizabeth Waterstrat. At approximately 3:35 p.m. on July 18, 2010, she parked her car near 1652 West Cortland Avenue in Chicago, Illinois, and left the bicycle attached to a rack on her trunk while she entered a restaurant. Upon her return less than 10 minutes later, the bicycle was missing. She found a streak of green paint on her rear bumper.

¶ 4    That night, Bravi searched craigslist.org for the bicycle. She explained that craigslist.org is "a website where people go to list items for sale." Respondent made several hearsay objections when the State examined Bravi about the website's content. The court overruled these objections, noting, "I will not allow it for the truth of the matter asserted, but I will allow it to explain the steps that were taken in pursuit of an arrest." Bravi then testified that she discovered an advertisement for a Cervelo P2C bicycle resembling Waterstrat's on craigslist.org. The advertisement included a telephone number and four photographs of

_____

[1]This case was recently reassigned by the court.

- 2 -

Cervelo P2 bicycles, though not the P2C model. She then used an Internet service to find the address associated with the telephone number listed in the advertisement. Bravi provided the telephone number, address, and advertisement to Detective Castaneda at Area 5 police headquarters.

¶ 5 Johana Cedicci testified that a sedan carrying respondent passed within 10 feet of her and Piper Gorsuch[2] near the 1600 block of Cortland Avenue at approximately 3:40 p.m. on July 18, 2010. Respondent was turned around in the front passenger seat, holding onto a "triathlon bicycle" that jutted out of the open rear door. It was a sunny afternoon, and nothing obstructed her view of respondent. On July 22, 2010, Cedicci viewed a photo array and a five-person lineup and tentatively identified two of the subjects. Respondent was not represented in either the photo array or the lineup. On July 23, 2010, she viewed a second five-person lineup and positively identified respondent as the front seat passenger.

¶ 6 Piper Gorsuch testified that, at approximately 3:40 p.m. on July 18, 2010, she and Johana Cedicci were walking along the 1600 block of Cortland Avenue when an older, electric teal Japanese sedan disregarded a stop sign. Respondent sat in the front passenger seat with the window rolled down and was holding onto a Cervelo triathlon bicycle that stuck out of the open rear door. It was a bright, clear day, and respondent passed within 10 feet of her. Nothing obstructed Gorsuch's view of respondent. On July 22, 2010, Gorsuch viewed a photo array and lineup, but could not make a definite identification. On July 23, 2010, she viewed a second lineup and identified respondent as the front seat passenger.

¶ 7 Detective Jose Castaneda testified that Bravi, his former neighbor, contacted him regarding a stolen bicycle on July 19, 2010. Bravi told him that she believed the bicycle was being sold on craigslist.org, and Castaneda viewed the advertisement. When the State examined Castaneda regarding the advertisement's content, respondent made a hearsay objection. The State responded that the advertisement was not being offered for the truth of the matter asserted, but rather to show how the detective proceeded with his investigation. The trial court allowed the testimony for that limited purpose. Castaneda further testified that he performed a database search using the telephone number listed in the advertisement and discovered related names, addresses, and car registration information.

¶ 8 On July 23, 2010, Castaneda went to the 1600 block of North Oakley Avenue, where he found a car matching one of the witness's descriptions. He detained respondent and another Hispanic male, who were sitting in the front seat. He further testified that, when he dialed the telephone number listed in the craigslist.org advertisement, respondent's cellular telephone rang. Respondent made another hearsay objection, which the trial court overruled, stating that the testimony would be allowed for a limited purpose.

¶ 9 On July 22, 2010, Castaneda showed Cedicci and Gorsuch a photo array, and they identified Miguel and Renee Salsedo. Later that day, Castaneda conducted a physical lineup with the Salsedos as subjects, but neither Cedicci nor Gorsuch was able to identify them.

---

[2]There is some confusion as to whether her name is "Piper T. Gorsuch" or "Piper Tgorsuch." We have opted for "Gorsuch."

Respondent was not represented in either the photo array or the lineup. The following day, Castaneda arranged a second lineup, and Cedicci and Gorsuch identified respondent.

¶ 10    The parties stipulated that Elizabeth Waterstrat's bicycle had a value of between $5,000 and $6,000, and that neither she nor Bravi consented to respondent taking it.

¶ 11    During its oral pronouncement, the trial court noted that Bravi "did some independent investigation" and, as she "looked through some websites he she [*sic*] was able to see a picture of a bicycle that closely resembled the bike that was taken from her and she contacted her former neighbor, who was a detective, and the investigation proceeded from there." The court continued:

> "[Respondent's] attempt to sell the bicycle further reinforces that he had the intent to permanently deprive the true owner of that bicycle.
>
> When they called the number in the ad for sale, that phone rang in the minor's hand. That is significant evidence. Circumstantial evidence shows the minor knew the bicycle was not his. He did not have the right to be selling it, possessing it ***."

The trial court adjudicated respondent delinquent and sentenced him to 18 months' probation. This appeal followed.

¶ 12                                   ANALYSIS

¶ 13    Respondent contends on appeal that the trial court improperly relied on hearsay evidence, specifically, the content of a craigslist.org advertisement, in finding that he committed theft. The State argues that respondent forfeited this issue and, alternatively, that no hearsay testimony was admitted. We hold that the trial court improperly admitted and relied on the content of the craigslist.org advertisement. Because this error was not harmless, we reverse and remand this cause for further proceedings.

¶ 14                                 A. Forfeiture

¶ 15    We must first determine whether respondent preserved this issue for appellate review. The State maintains that respondent forfeited this argument when he failed to object during the trial court's oral pronouncement. Respondent claims that the trial court's reliance on hearsay evidence constituted plain error.

¶ 16    Generally, to preserve an issue for appeal, a criminal defendant must object at trial and raise the issue in a posttrial motion. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). In juvenile proceedings, the respondent must object at trial, but need not include the issue in a post-adjudication motion. *In re M.W.*, 232 Ill. 2d 408, 430 (2009). In this case, respondent timely and repeatedly objected during Bravi's and Detective Castaneda's testimony to the admission of hearsay. These objections were sufficient to preserve this issue for review.

¶ 17    The State acknowledges these objections, but argues that respondent "did not object when the trial court allegedly relied on the purported hearsay for the truth of the matter asserted to establish respondent's identity as the offender." The State cites no authority for the proposition that a respondent must object during a court's oral pronouncement to preserve an evidentiary issue, and no such authority appears to exist. See *People v. Ford*, 301 Ill. App. 3d 56, 59 (1998)

(reviewing courts need not address arguments that lack citation to relevant authority); see also Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (argument must be supported by citation to authority). Accordingly, we reject the State's forfeiture argument.

¶ 18                                    B. Standard of Review

¶ 19    We must next determine the appropriate standard of review. Relying on *People v. Chapman*, 194 Ill. 2d 186, 217 (2000), respondent contends that, because "this issue concerns the judge's compliance with the law, and not determinations of credibility, this Court's review is *de novo*." *Chapman* addressed a fourth amendment issue wholly unrelated to the instant evidentiary question. *Chapman*, 194 Ill. 2d at 217. The portion cited by respondent merely sets forth the general proposition that purely legal issues are reviewed *de novo*. *Id.* Because it does not concern the admission of, and reliance on, hearsay, we find *Chapman* unavailing.

¶ 20    The State argues that this issue should be reviewed for abuse of discretion. We agree. Evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). Specifically, Illinois courts apply an abuse-of-discretion standard when reviewing a trial court's decision regarding the admission of hearsay. See, *e.g.*, *Caffey*, 205 Ill. 2d at 89; *People v. West*, 158 Ill. 2d 155, 164-65 (1994). An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Patrick*, 233 Ill. 2d 62, 68 (2009).

¶ 21                                    C. Hearsay Analysis

¶ 22    Respondent contends that the trial court admitted Bravi's and Detective Castaneda's testimony regarding the content of the craigslist.org advertisement to show the course of their investigation, but improperly considered that testimony for the truth of the matter asserted. The State argues that no out-of-court statements were admitted, because neither Bravi nor Detective Castaneda testified regarding the content of the craigslist.org advertisement.

¶ 23    Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. *Caffey*, 205 Ill. 2d at 88. Hearsay is generally inadmissible, unless it falls within an exception to the rule. *Id.* at 89. One such exception holds that police officers may testify to information they received during the course of an investigation to explain why they arrested a defendant or took other action. *People v. Rush*, 401 Ill. App. 3d 1, 15 (2010). Such testimony is not hearsay, because it is offered to show the steps an officer took rather than for the truth of the matter asserted. *Id.* Under the course-of-investigation exception to the hearsay rule, an officer may not testify to information beyond what is necessary to explain his or her actions. *People v. Edgecombe*, 317 Ill. App. 3d 615, 627 (2000). Nor may an officer testify to the content of any statements he received. *People v. Gacho*, 122 Ill. 2d 221, 248 (1988).

¶ 24    Here, we must determine whether Bravi's and Detective Castaneda's testimony regarding the content of a craigslist.org advertisement was admissible to show the course of their investigation. We examine their statements separately.

¶ 25                                    1. Bravi

¶ 26        At trial, Bravi testified that she discovered a craigslist.org advertisement for a Cervelo P2C bicycle similar to Waterstrat's. She explained that craigslist.org is a website where items may be listed for sale. Bravi further stated that the advertisement contained four photographs of Cervelo bicycles, though they depicted other Cervelo models. Finally, she testified that she recorded the telephone number listed in the advertisement and, through research, determined the address that corresponded with that number. Over respondent's objection, the trial court allowed her testimony "to explain the steps that were taken in pursuit of an arrest."

¶ 27        Bravi's testimony regarding the advertisement's content constituted hearsay. Illinois courts have long held that hearsay includes written out-of-court statements. *People v. Carpenter*, 28 Ill. 2d 116, 121 (1963) (hearsay includes written evidence). Further, hearsay includes both matters directly asserted and matters the declarant necessarily implicitly intended to express. *People v. Thomas*, 178 Ill. 2d 215, 237 (1997). The statement here consisted of the advertisement's written content and the implication that a Cervelo P2C bicycle was for sale and that interested parties could contact the seller via the telephone number listed.

¶ 28        The trial court recognized that the State was offering an out-of-court statement, but admitted it to show course of investigation, noting that Bravi may "explain the steps that were taken in pursuit of an arrest." Police officers may testify to information they received during the course of an investigation to explain why they arrested a defendant or took other action. *Rush*, 401 Ill. App. 3d at 15. Such testimony is not hearsay, because it is offered to show the steps an officer took rather than for the truth of the matter asserted. *Id.*

¶ 29        Bravi, however, was not a police officer. She was a layperson conducting her own private investigation. The State argues that Bravi's testimony was "analogous to a situation where a police officer testified about the course of his or her investigation" and advocates the extension of this exception to laypersons. The State cites no authority for this proposition, and none appears to exist. See *Ford*, 301 Ill. App. 3d at 59 (reviewing courts need not address arguments that lack citation to relevant authority); see also Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (argument must be supported by citation to authority).

¶ 30        Moreover, we see no need to address whether the course-of-investigation exception should be extended to laypersons. By any measure, Bravi's testimony was inadmissible, as it exceeded the bounds of the course-of-investigation exception, where she testified to the advertisement's content. *People v. Jones*, 153 Ill. 2d 155, 160 (1992) (substance of statement normally inadmissible under course-of-investigation exception); *People v. Morgan*, 142 Ill. 2d 410, 447 (1991), *rev'd on other grounds*, *Morgan v. Illinois*, 504 U.S. 719 (1992) (same); *Gacho*, 122 Ill. 2d at 248 ("Had the substance of the conversation *** been testified to, it would have been objectionable hearsay."). Accordingly, Bravi's testimony regarding the content of the craigslist.org advertisement constituted hearsay and should not have been admitted at trial.


¶ 31                               2. Detective Castaneda

¶ 32    Detective Castaneda testified that he spoke to Bravi, who told him that Waterstrat's bicycle was being sold on craigslist.org. Upon viewing the website, he found a telephone number, and based on that number was able to obtain related names, addresses, and car registration information. He further testified that, when he arrested respondent, he called the telephone number listed in the advertisement, and respondent's cellular telephone rang. Respondent repeatedly objected to Detective Castaneda's testimony. The trial court again recognized that the State sought to offer an out-of-court statement, but admitted the testimony to show "how the detective proceeded with his investigation."

¶ 33    Unlike Bravi, Detective Castaneda was a police officer acting in the line of duty. In order for him to explain the course of his investigation, it was necessary for him to testify that, after viewing a craigslist.org advertisement, he went to the 1600 block of North Oakley Avenue, where he discovered a car matching the description he received and subsequently detained respondent. Had the detective's testimony been limited to this information, it would have been admissible, even though the trier of fact could have inferred that the advertisement implicated respondent. See *Gacho*, 122 Ill. 2d at 248 (testimony admissible even though the inference to be drawn therefrom is that the information motivated the officer's conduct).

¶ 34    But Detective Castaneda also testified regarding the advertisement's content. Specifically, he stated that Bravi told him that Waterstrat's bicycle was being sold on craigslist.org and that respondent's cellular telephone rang when he called the number listed in the advertisement. Generally, under the course-of-investigation exception, an officer may not testify to a statement's content. *Jones*, 153 Ill. 2d at 160 (substance of statement normally inadmissible under course-of-investigation exception); *Morgan*, 142 Ill. 2d at 447 (same); *Gacho*, 122 Ill. 2d at 248 (same).

¶ 35    In *People v. Jura*, 352 Ill. App. 3d 1080, 1088, 1095 (2004), this court reversed and remanded for a new trial, where the trial court improperly admitted the content of a police radio message under the course-of-investigation exception. The *Jura* court noted that the substance of the message "directly impacts the very essence of the dispute: whether the defendant was the man who possessed the gun." *Id.* at 1088. In this case, the trial court admitted the content of a craigslist.org advertisement under the course-of-investigation exception. Here, as in *Jura*, the content of the craigslist.org advertisement directly impacts the very essence of the dispute: whether respondent was the person who took Waterstrat's bicycle. Further, the advertisement's content was not necessary to explain the course of Detective Castaneda's investigation. See *Edgecombe*, 317 Ill. App. 3d at 627 (under the course-of-investigation exception to the hearsay rule, an officer may not testify to information beyond what is necessary to explain his or her actions). Because it was inadmissible under the course-of-investigation exception, the advertisement's content constituted hearsay and should not have been admitted at trial.

¶ 36                                    D. Harmless Error Analysis

¶ 37    Because error occurred, we must engage in a harmless error analysis. The remedy for erroneous admission of hearsay is reversal, unless the record clearly shows that the error was harmless. *People v. Miles*, 351 Ill. App. 3d 857, 867 (2004). When examining whether the

- 7 -

admission of hearsay was harmless, reviewing courts must ask whether there is a reasonable probability that the trier of fact would have acquitted the defendant had the hearsay been excluded. *People v. Warlick*, 302 Ill. App. 3d 595, 601 (1998).

¶ 38 The State was required to prove that respondent knowingly obtained or exerted unauthorized control over Waterstrat's bicycle, which had a value exceeding $300, and that he did so with the intent to permanently deprive Waterstrat of her bicycle. 720 ILCS 5/16-1(a)(1)(A) (West 2010). There were only two contested issues at trial: (1) whether respondent was the front seat passenger in the teal sedan; and (2) whether the bicycle in the teal sedan was Waterstrat's.

¶ 39 Regarding the first question, the trial court credited Cedicci's and Gorsuch's identifications of the respondent as the front seat passenger: "The witnesses were clear, uncontroverted in their observations [and] their ability to see the minor respondent's face ***." The court also discounted the only evidence that undercut these identifications, finding that the photo array "was not done in the police station and it was not done under circumstances that I believe support the reliability of that identification." Thus, even excluding Bravi's and Detective Castaneda's hearsay testimony, there was sufficient evidence that respondent was the front seat passenger in the teal sedan.

¶ 40 Turning to the second question, although no one observed respondent taking Waterstrat's bicycle, and the bicycle was not recovered, the State presented circumstantial evidence that the bicycle in the teal sedan was Waterstrat's. Specifically, Gorsuch testified that the bicycle in the sedan was a Cervelo triathlon bicycle, the same as Waterstrat's. The bicycle was seen on the 1600 block of West Cortland Avenue, where the offense took place, approximately five minutes after the bicycle was taken. Additionally, rather than being mounted to a rack, the bicycle jutted haphazardly out of the car's open rear door.

¶ 41 It is possible that a trier of fact could find, based on this evidence, that the bicycle in the teal sedan was Waterstrat's. But the trial court's oral pronouncement did not show reliance on this evidence. Instead, its stated reasoning rested almost entirely on hearsay. During its oral pronouncement, the court noted that Bravi "did some independent investigation on her own to try to determine what happened to the bicycle. As she looked through some websites he she [*sic*] was able to see a picture of a bicycle that closely resembled the bike that was taken from her ***." The court further found that, "When they called the number in the ad for sale, that phone rang in the minor's hand. That is significant evidence. Circumstantial evidence shows that minor knew the bicycle was not his. He did not have the right to be selling it [or] possessing it ***." Given the trial court's express and nearly exclusive reliance on hearsay in addressing this question, we find that there is a reasonable probability that the trier of fact would have acquitted respondent had the hearsay been excluded.

¶ 42 In reaching this conclusion, we recognize that, unlike in a jury trial, when a judge sits as the trier of fact, we must presume that he or she will only consider competent evidence. *People v. Naylor*, 229 Ill. 2d 584, 603-04 (2008). This presumption is overcome, however, where the record affirmatively shows that the judge considered improper evidence. *Id.* Here, the record affirmatively shows that the trial judge relied heavily on the hearsay content of the craigslist.org advertisement. Indeed, the trial judge did not expressly rely on any other

evidence in finding that the bicycle in the teal sedan was Waterstrat's. Accordingly, we find that the presumption that the trial judge relied only on competent evidence has been overcome.

¶ 43    The outcome would likely have been different had the trial court not expressly relied on hearsay during its oral pronouncement. For instance, had the court forgone a lengthy pronouncement, or relied in its pronouncement upon properly admitted evidence, we would likely find the error harmless. Compare *In re E.H.*, 377 Ill. App. 3d 406, 415-16 (2007) (error not harmless where trial judge expressly relied on inadmissible hearsay), and *People v. Johnson*, 296 Ill. App. 3d 53, 66 (1998) (same), with *People v. Yancy*, 368 Ill. App. 3d 381, 385-87 (2005) (error harmless where there was no evidence to overcome the presumption that the trial judge disregarded hearsay testimony), and *People v. Cassell*, 283 Ill. App. 3d 112, 125 (1996) (same). Here, as in every case, we do not know the full basis of the trial judge's factual findings. We know only what the judge stated in her oral pronouncement. Based on that pronouncement, we know that the judge relied heavily on hearsay to find that the bicycle in the teal sedan was Waterstrat's. Accordingly, we must reverse and remand for a new trial.

¶ 44    While the dissent seeks to recast the issue presented as reasonable doubt and reverse respondent's delinquency adjudication outright, neither side raised reasonable doubt in its briefs, nor does respondent seek the remedy of outright reversal that the dissent would give. Indeed, the phrase "outright reversal" appears nowhere in the six briefs filed in this case. Rather, respondent repeatedly asks this court for reversal and "remand for further proceedings." The parties also devote considerable attention to forfeiture and plain error arguments that would be irrelevant to a reasonable doubt issue. See *People v. Enoch*, 122 Ill. 2d 176, 190 (1988) (criminal defendants need not preserve reasonable doubt for appellate review). We should not ignore the issues raised, briefed, and argued by the parties, and without input from them, decide the case on a basis that was not addressed by the parties. See *People v. Givens*, 237 Ill. 2d 311, 323-30, 339 (2010) (vacating the appellate court's judgment and remanding for further proceedings, where the court ignored issues raised by the parties and *sua sponte* considered an issue not raised, briefed, or argued); *People v. McNeal*, 405 Ill. App. 3d 647, 676 (2010) ("a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment" (emphasis and internal quotation marks omitted)); see also *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (" '[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.' " (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g *en banc*))). Each party viewed this case as raising an evidentiary matter, and so do we.

¶ 45    Even if we addressed the issue raised by the dissent, we would not reach its conclusion that the prosecution failed to prove respondent guilty beyond a reasonable doubt. Two witnesses identified respondent, both in a lineup and at trial, as the person holding onto a triathlon bicycle that jutted haphazardly out of the open rear door of a fast-moving car. Not only did they observe the car on the same block as the offense and within five minutes of the offense, but Gorsuch identified the bicycle as a Cervelo brand triathlon bicycle, the same as Bravi's. Because respondent passed within 10 feet of the witnesses on a clear and sunny afternoon, and because the witnesses had unobstructed views, they were able to describe the action with

considerable specificity: respondent sat in the front seat; he was turned around in his seat; his window was rolled down; the car was an older, electric teal Japanese sedan; the car ran a stop sign; a bicycle jutted out of the open rear door; and the bicycle was a Cervelo triathlon bicycle, like Bravi's.

¶ 46    We also find Cedicci's and Gorsuch's identifications compelling. Although the witnesses tentatively identified the Salsedos in a photo array, they abandoned these identifications upon viewing the Salsedos in person. Later, when respondent was a lineup subject, Cedicci and Gorsuch showed no hesitation in positively identifying him. The trial court credited these identifications.

¶ 47    The dissent also notes that respondent has already served his sentence and, according to the presentence investigation report, was young and learning disabled at the time of the offense. Respondent's completion of his sentence should have no bearing on our decision. See *People v. Jordan*, 218 Ill. 2d 255, 263 (2006) (fact that defendant has already served sentence does not render appeal moot). Similarly, respondent's age is irrelevant, as theft requires proof of the same elements regardless of age. See 720 ILCS 5/16-1 (West 2010); see also *People v. Morgan*, 197 Ill. 2d 404, 424-25 (2001) (society has a legitimate interest in being protected from criminal acts perpetrated by minors). Likewise, although it was pertinent at sentencing, respondent's learning disability is irrelevant both to the evidentiary matter raised by the parties and the reasonable doubt matter raised by the dissent and should not be considered on appeal. See *People v. Fontana*, 251 Ill. App. 3d 694, 702-03 (1993) (where defendant does not present an insanity defense, evidence of his learning disability is irrelevant during guilt phase).

¶ 48                                    CONCLUSION

¶ 49    For the foregoing reasons, we reverse respondent's delinquency adjudication and sentence and remand for further proceedings.

¶ 50    Reversed and remanded for further proceedings.

¶ 51    JUSTICE PUCINSKI, dissenting.

¶ 52    My respected colleagues have held that the trial court committed error when it relied on unadmitted hearsay evidence in a bench trial which found Jovan guilty of stealing the bicycle, adjudicated him a delinquent and sentenced him to 18 months' probation. They have reversed the respondent's conviction and remanded this cause for further proceedings. I would reverse outright. I note that Jovan has already completed his probation.

¶ 53    On appeal, respondent contends that his adjudication should be reversed because the trial court improperly considered statements on a website for the truth of the matter asserted and as "significant" evidence of his guilt.

¶ 54    The record establishes that in September 2010, the State filed a petition for adjudication of delinquency and wardship alleging that respondent committed the offense of theft (720 ILCS 5/16-1(a)(1) (West 2010)). The charge stemmed from an incident in July, when a bicycle belonging to Elizabeth Waterstraat was stolen.

¶ 55    At trial, Lori Bravi testified that at 3:35 p.m. on July 18, 2010, she parked her car at 1652 West Cortland in the Bucktown neighborhood of Chicago and went inside a restaurant to pick up family members. Ten minutes later, she returned to her car and saw that the Cervelo P2C triathlon bicycle, which she had borrowed from her friend Elizabeth Waterstraat, was gone from the bicycle rack on her car trunk and there was fresh, green paint transfer on the rear car bumper. Bravi called the police and spoke to two witnesses, Johana Cedicci and Piper T. Gorsuch. That night, Bravi searched online for the bicycle.

¶ 56    Over respondent's hearsay objection, Bravi further testified that she found a classified ad on craigslist.org for a Cervelo P2C bicycle with four photographs of newer model Cervelo bicycles and a phone number. She used an online reverse phone number search to find an address associated with the phone number listed in the ad. When the State attempted to elicit that address, the trial court sustained respondent's hearsay objection but permitted Bravi to testify that she gave the information to a detective.

¶ 57    Johana Cedicci and Piper T. Gorsuch positively identified respondent in court as the person whom they observed, in the front passenger seat of a speeding sedan, holding a triathlon bicycle jutting out of the open back door. Gorsuch described the sedan as electric teal in color. Both testified that the passenger side window was open and respondent was smiling. Both identified People's Group Exhibit Number One as three photographs accurately depicting the physical lineup she viewed on July 23, 2010, and in which she positively identified respondent.

¶ 58    Detective Jose Castaneda testified that on July 21, 2010, he received information gathered by Bravi regarding the stolen bicycle, which included a phone number and possible addresses associated with that number, and viewed the classified ad on craigslist.org. When the State attempted to elicit the content of the ad, the trial court sustained respondent's hearsay objection, but allowed Castaneda to testify that a phone number was listed in the ad for the limited purpose of showing how the detective proceeded with his investigation. Castaneda then testified that he researched the phone number and addresses provided by Bravi and found a registered name. The next day, he showed Cedicci and Gorsuch a photo array and lineup, neither of which included respondent. Cedicci and Gorsuch tentatively identified Renee and Miguel Salsedo as the individuals they observed in the speeding sedan, then positively identified respondent in a lineup two days later.

¶ 59    Castaneda further testified that on July 23, 2010, he observed two individuals in a parked vehicle matching the witnesses' description in the vicinity of one of the addresses given to him by Bravi. He added that "one description [of the individuals] matched very closely to the driver of the vehicle at the time." Castaneda then positively identified respondent in court as one of those individuals whom he detained for questioning. Over respondent's hearsay objection, Castaneda testified that the phone number listed in the classified ad was serviced by Cricket and that respondent was holding a Cricket cell phone at the time. When Castaneda dialed the phone number listed in the classified ad, the Cricket cell phone that respondent was holding rang.

¶ 60    After the parties stipulated to Waterstraat's ownership and the value of the bicycle, the State rested and the trial court denied respondent's motion for a directed finding. Respondent rested without testifying or presenting any witnesses on his behalf.

¶ 61    During closing argument, the State conceded that the facts of this case were "rather complicated," but maintained there was "a great deal of circumstantial evidence that places this minor as being the individual that was involved in taking the bike." According to the State, "all that needs to be proved in this case is that the minor was involved in the stealing of this bicycle." The State argued, "just by the fact that [respondent] was holding the bicycle, *** that shows that he participated in this crime of trying to keep the bicycle inside the car as it was being driven away. That is participation and is part of the theft." The State concluded that it had proven its case beyond a reasonable doubt "with the eyewitness' testimony of what they saw along with all of the other circumstantial evidence."

¶ 62    In closing, respondent's counsel acknowledged there was testimony that respondent was the individual observed holding the bicycle inside the car, but noted that no one saw respondent remove the bicycle from the rack on Bravi's car trunk and argued, at best, "that may be possession of stolen property." Counsel then challenged the witnesses' identification of respondent, noting that two other individuals were initially arrested and tentatively identified as the offenders.

¶ 63    At the close of arguments, the trial court adjudicated respondent delinquent based on the theft of Waterstraat's bicycle. In doing so, the trial court highlighted the following findings of fact:

> "Prior to them seeing that incident, we heard from Lori Bravi who said that she had borrowed a bicycle from her friend, a very expensive triathlon bicycle, that she had it on the back of her car and that she had it there for about ten minutes when she was going inside a restaurant. When she returned, the bicycle was gone.
>
> She also noticed there was some green paint on her bumper which had not been there prior. When Ms. Piper T'gorsuch [sic] and Ms. Cedicci contacted–spoke to the witnesses on the scene, they all contacted the police and Ms. Bravi also did some independent investigation on her own to try to determine what happened to the bicycle.
>
> As she looked through some websites *** she was able to see a picture of a bicycle that closely resembled the bike that was taken from her and she contacted her former neighbor, who was a detective, and the investigation proceeded from there.
>
> ***
>
> Now, the law of theft requires, not that someone be seen taking property, but that that person knowingly possesses property with the intent to permanently deprive the rightful owner from that property.
>
> In this case, Ms. Bravi had possession of the bicycle through permission of a friend. The minor was seen in circumstances that are consistent with knowing he did not have permission to have that bicycle. I believe he was that person in the front passenger seat of the car and that he was that person who was holding onto the bicycle.
>
> His attempt to sell the bicycle further reinforces that he had the intent to permanently deprive the true owner of that bicycle.
>
> When they called the number in the ad for sale, that phone rang in the minor's hand. That is significant evidence. Circumstantial evidence shows the minor knew the

bicycle was not his. He did not have the right to be selling it, possessing it and I believe he was accountable for this theft rather [*sic*] he physically removed it from the car or was just physically holding it within the car that was the get-away car.

The witnesses were clear, uncontroverted in their observations, their ability to see the minor respondent's face and there will be a finding of guilty as charged."

¶ 64  In this court, respondent does not challenge the admissibility of purported hearsay evidence. Rather, he initially contends that the trial court impermissibly considered out-of-court statements, which it had admitted for the limited purpose of showing the course of investigation, as proof that he committed the bicycle theft. Although respondent acknowledges the presumption in a bench trial that the trial court considered only competent evidence (see, *e.g.*, *People v. Simon*, 2011 IL App (1st) 091197, ¶ 91), he argues that the trial court's ruling rebuts that presumption.

¶ 65  The State initially asserts that respondent has forfeited consideration of the error by failing to object at the time of the trial court's oral pronouncement finding that he committed the theft, when it "explicitly referred to the fact that the number listed on the website belonged to the phone in [respondent's] hand" as "significant evidence." The State notes that the same forfeiture principles applicable in criminal proceedings are applicable in juvenile proceedings even though a postadjudication motion is not required to preserve a claimed error for review. See, *e.g.*, *In re Samantha V.*, 234 Ill. 2d 359, 368 (2009). In this regard, the State acknowledges respondent's assertion, "albeit in the context of harmless error," that the issue is preserved because trial counsel made a timely objection to the admissibility of certain testimony on hearsay grounds. The State argues, however, that while respondent made a standing hearsay objection during Bravi's testimony and a hearsay objection each time Detective Castaneda was questioned about the classified ad during the course of his investigation, respondent now presents a related, but distinct, issue that was not brought to the trial court's attention, namely, the court's consideration of that evidence for an improper purpose. The State argues that this distinct issue should not be reviewed for plain error because respondent fails to recognize his forfeiture under these circumstances, nor has he offered any argument under either prong of the plain error doctrine.

¶ 66  Although respondent's arguments for plain error review in his reply brief are sufficient to allow this court to review the issue for plain error (*People v. Ramsey*, 239 Ill. 2d 342, 412 (2010)), the first step is to determine whether the State is correct that respondent has forfeited the issue (*People v. Hillier*, 237 Ill. 2d 539, 549 (2010)) because that guides the analysis (*People v. Thompson*, 238 Ill. 2d 598, 611 (2010)). The State correctly notes that to preserve a claim of trial court error, respondent must make a timely objection at trial and raise the error in a written posttrial motion. See, *e.g.*, *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, I would find that the State's failure to cite more than general forfeiture principles in criminal proceedings (*People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007); *Robinson v. Point One Toyota, Evanston*, 2012 IL App (1st) 111889, ¶ 60), coupled with the State's recognition that a postadjudication motion is not required in a juvenile proceeding to preserve a claimed error for review, results in the State's forfeiture of its forfeiture argument. *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010).

¶ 67 Moreover, while research reveals no juvenile delinquency cases where the failure to object during the trial court's oral pronouncement of delinquency constituted forfeiture, I note that an oral pronouncement of delinquency does not expressly contemplate the taking of evidence, but only contemplates the act of articulating the finding of the court. *In re Driver*, 46 Ill. App. 3d 574, 577 (1977). Because the trial court made the objectionable statements during its pronouncement of delinquency when no evidence was being taken, I would find the issue of the trial court's improper "consideration" of "evidence," which it had limited based on respondent's objection during trial, sufficiently preserved for review. See *In re Dontrale E.*, 358 Ill. App. 3d 136, 139 (2005) (State cited no authority for its position that respondent was required to move the trial court to reconsider its extended jurisdiction juvenile designation in order to preserve the issue for review).

¶ 68 Upon request, respondent filed a supplemental brief supporting his position that it was judicial error for the trial court to rely on a document as the basis of its analysis of a necessary element of the criminal offense when the court previously limited discussion of the document only to demonstrating the course of the investigation and the document itself was not admitted into evidence. As framed in respondent's supplemental brief, the issue presented for review is "[w]hether the trial court erred when it relied on the substance of a craigslist posting to prove elements of the offense when the posting was never admitted into evidence substantively." As framed in the State's reply, the issue presented for review is "[w]hether the trial court drew reasonable inferences from competent, nonhearsay testimony to find respondent guilty of burglary [*sic*]." Respondent discusses what "evidence" was substantively considered by the trial court in making its findings of fact regarding his criminal intent and the State refers to "reasonable inferences" to be drawn from other competent, nonhearsay testimony. See, *e.g.*, *People v. Schmidt*, 405 Ill. App. 3d 474, 484 (2010).

¶ 69 Respondent attempts to invoke a more favorable *de novo* standard of review (*People v. Burtron*, 376 Ill. App. 3d 856, 860-61 (2007)) by asserting that the trial court's findings were based on evidence outside the record (see, *e.g.*, *People v. Salinas*, 383 Ill. App. 3d 481, 500 (2008)), which is consistent with the State's assertion that "[a]t no time did Ms. Bravi offer hearsay testimony, and she certainly did not testify that the craigslist.org posting indicated that a Cervelo P2C was for sale and that respondent was the seller." It is also consistent with respondent's assertion that he is not challenging the admissibility of purported hearsay evidence. "Merely because something is admissible into evidence does not mean that it is sufficient to prove a fact or raise a reasonable inference of a fact." *People v. Davis*, 278 Ill. App. 3d 532, 544 (1996). The State understands respondent to be challenging the sufficiency of the evidence relating to a particular element of the offense (*People v. Smith*, 342 Ill. App. 3d 289, 293 (2003)), and respondent expressly asks this court to review the trial court's findings of fact regarding his intent to permanently deprive the owner of her bicycle (720 ILCS 5/16-1(a)(1)(A) (West 2010)), which presents disputed questions of fact. *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 36 (and cases cited therein).

¶ 70 Ultimately, respondent is attacking the trial court's delinquency determination based on the evidence, and "such an attack is analogous to a criminal defendant's appellate attack on the sufficiency of evidence to convict in a criminal bench trial." *In re Driver*, 46 Ill. App. 3d at

575-76; see also *In re Malcolm H.*, 373 Ill. App. 3d 891, 893-94 (2007) (constitutional protection of proof beyond a reasonable doubt applies to the adjudicatory stage of juvenile delinquency proceedings), and *People v. Berrier*, 362 Ill. App. 3d 1153, 1169-70 (2006) (defendant's challenge to the sufficiency of the evidence supporting his drug possession conviction was that there was no evidence that the materials discovered were actually controlled substances and no credible evidence to support the conclusion that he actually possessed the drugs, and as to his criminal damage to property conviction, there was no proof that he knowingly caused the damage). Under these circumstances, it is our responsibility to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *In re W.C.*, 167 Ill. 2d 307, 336 (1995).

¶ 71    Generally, the State must prove, beyond a reasonable doubt, the elements of the substantive offense alleged in a delinquency petition, and in doing so, the State may be entitled to rely upon presumptions or inferences. *In re W.C.*, 167 Ill. 2d at 336. To sustain respondent's conviction for theft in this case, the State was required to prove that he knowingly obtained or exerted unauthorized control over the bicycle of the owner, intending to permanently deprive the owner of the use and benefit of her bicycle. 720 ILCS 5/16-1(a)(1)(A) (West 2010). Theft requires proof of two mental states. *People v. Jones*, 149 Ill. 2d 288, 296 (1992). The two necessary elements of theft, a proscribed act (committed knowingly (*People v. Nunn*, 77 Ill. 2d 243, 249 (1979))) and the requisite intent, must coincide. *People v. Haissig*, 2012 IL App (2d) 110726, ¶ 26; see *People v. Haynes*, 132 Ill. App. 2d 1031, 1032 (1971) ("[a] person could have exerted unauthorized control over property knowingly without intending to permanently deprive the owner of the use of the property").

¶ 72    " 'The State must present sufficient evidence from which an inference of knowledge can be made, and any inference must be based upon established facts and not pyramided on intervening inferences.' " *In re Keith C.*, 378 Ill. App. 3d 252, 260 (2007) (quoting *People v. Weiss*, 263 Ill. App. 3d 725, 731 (1994)). Knowledge is distinguishable from intent in that it does not necessitate a showing of conscious objective or aim and contemplates what the person was " 'subjectively, consciously aware of.' " *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 54 (quoting 1 John F. Decker, Illinois Criminal Law § 2.34, at 2-69 (2d ed. 1993)). Coincidentally, proof of respondent's intent to permanently deprive could include his "use, abandonment, or concealment of the property, or consist entirely of his initial taking or control over the property under circumstances suggesting that he intends to permanently retain it." *Haissig*, 2012 IL App (2d) 110726, ¶ 32. The supreme court has stated that "[p]roof that specifically identifiable property was taken from the burglarized premises is not an essential element of [burglary] [citation], as it may be in other cases (see, *e.g.*, Ill. Rev. Stat. 1977, ch. 38, pars. 16-1(a) through (d) (*theft*)), and the State may prove its case without introducing any such evidence." (Emphasis added.) *People v. Panus*, 76 Ill. 2d 263, 269 (1979).

¶ 73    The requisite knowledge and intent for a theft charge may be proven indirectly by inference or by deduction made by the trier of fact based upon the facts and circumstances of the case. *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 32. "Direct evidence has been described as evidence which, if believed, proves the existence of the fact in issue *without*

- 15 -

*inference or presumption*, whereas circumstantial evidence is evidence which, without going directly to prove existence of a fact, gives rise to a *logical inference* that such fact does exist." (Emphases added.) *People v. Christiansen*, 118 Ill. App. 2d 51, 56 (1969).

¶ 74 "Inferences which constitute elements of the offense, such as the requisite state of mind, should be based directly on established facts and not pyramided upon intervening inferences." *People v. Davis*, 50 Ill. App. 3d 163, 168 (1977). According to the State, "the record reflects that the [trial] court drew *reasonable* inferences from Ms. Bravi's and Detective Castaneda's non-hearsay testimony, *logically concluded* that respondent had attempted to sell Ms. Waterstra[a]t's bicycle, and found that this was yet further evidence of respondent's intent to permanently deprive her of her bicycle." (Emphases added.)

¶ 75 I am mindful that the finding of a trial court, in a nonjury case, as here, is entitled to great weight because the court is able to observe the witnesses, assess their credibility and determine the weight to be accorded their testimony. *People v. Gillespie*, 276 Ill. App. 3d 495, 499-500 (1995). We do not second-guess the credibility determinations made by the trial court, nor do we attempt to resolve conflicts in the testimony any differently than did the trial court. *Gillespie*, 276 Ill. App. 3d at 500. We also recognize that a defendant can be found guilty of theft solely on the basis of knowingly exerting unauthorized control over the property of another *at the time of arrest*, because the crime of theft is not limited to the original taking of the property (*People v. Alexander*, 93 Ill. 2d 73, 78 (1982); see also *People v. Price*, 221 Ill. 2d 182, 193 (2006)), but this is not such a case.

¶ 76 Here, in finding respondent delinquent based on theft, the trial court noted that the offense does not require that someone be seen taking property, but that the person knowingly possesses property with the intent to permanently deprive the rightful owner of that property. The trial court found that respondent's attempt to sell the bicycle "further reinforces" that he had the intent to permanently deprive the rightful owner of that bicycle, and referred to the fact that the cell phone in respondent's hand rang when the detective dialed the number listed in the classified ad as "significant evidence." The trial court also found that the circumstantial evidence showed that respondent knew the bicycle did not belong to him, that he had no right to sell or possess it, and that it believed respondent was *accountable*[3] for the theft whether he physically removed the bicycle from Bravi's car or physically held it in the "get-away car."

¶ 77 The State cites the following facts in support of the inferences upon which respondent's conviction are based: Bravi saw a bicycle and a phone number in a posting on craigslist.org. Based on this posting, Bravi alerted Detective Castaneda, who investigated the phone number and learned that it was serviced by Cricket. Then, Detective Castaneda went to an address where he detained respondent and observed a Cricket cell phone in respondent's hand. Detective Castaneda dialed the phone number in the posting and heard the cell phone in respondent's hand ring. Another person dialed the same phone number and again the same phone rang. Subsequently, Cedicci and Gorsuch identified respondent in a lineup.

---

[3]"It must be noted that accountability is a legal theory whereby a defendant is held responsible for a crime *** which he personally did not commit, but which was committed by his accomplice." *People v. Skiles*, 115 Ill. App. 3d 816, 825 (1983).

- 16 -

¶ 78    Considering the aforementioned facts, in the light most favorable to the prosecution, I would conclude that the State's evidence did not allow the trial court to reasonably infer respondent's intent to permanently deprive the owner of her bicycle. *People v. Harmon*, 2012 IL App (3d) 110297, ¶ 17. As the State notes, Bravi "certainly did not testify that the craigslist.org posting indicated that a Cervelo P2C was for sale and that respondent was the seller." The fact that Bravi observed a craigslist posting for a Cervelo P2C bicycle with photographs of newer model Cervelo bicycles and a phone number fails to establish, whether by inference or deduction, that anyone obtained control over Waterstraat's bicycle with the intent to permanently deprive her of it by selling it on craigslist. See *People v. Murray*, 262 Ill. App. 3d 1056, 1063 (1994).

¶ 79    "Craigslist is like a newspaper, and unlike a phone company or computer manufacturer, in that it publishes information supplied by its users" (*Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967 (N.D. Ill. 2009)), and that "[i]t is commonplace to see flyers or postings on Craigslist advertising a found item, which the finder hopes to return to its rightful owner so long as that person provides an accurate description of the item" (*Sanchez v. Melendrez*, 934 F. Supp. 2d 1325, 1334-35 (D. N.M. 2013)). Inferring respondent's mental state of intent from the fact that Bravi observed a craigslist posting for a similar bicycle, without any facts showing that the posting was published by respondent, and not some other person using a phone to which he had access, for the purpose of the sale of Waterstraat's specific bicycle "requires a leap of faith we are unwilling to take." *Gillespie*, 276 Ill. App. 3d at 500. There was no proof that respondent knew the bicycle was stolen, no proof that respondent posted anything about the bicycle anywhere, no proof that the respondent ever had that specific bicycle in his possession and no proof that respondent intended to permanently deprive the owner of her bicycle. Instead this case involves a young man who, according to his presentence report, was enrolled in special needs classes and had no significant interaction with the police. Although the evidence presented at trial may have established a strong suspicion that respondent was somehow involved in something related to the bicycle, there is no proof that he participated in the actual theft of the bicycle, only the weak identification linking him to holding a bicycle, not even specifically identified as the bicycle in question. I note the fact that respondent was not found in possession of the bicycle and no one described the bicycle with any particularity. *People v. Mason*, 211 Ill. App. 3d 787, 790 (1991). Absent these facts, the trial court's inference regarding respondent's intent to deprive Waterstraat of her Cervelo P2C bicycle was predicated on "guess, speculation, or conjecture." (Internal quotation marks omitted.) *Harmon*, 2012 IL App (3d) 110297, ¶ 16; *People v. Williams*, 376 Ill. App. 3d 875, 885 (2007). Where, as here, "the State's evidence is incomplete, the trier of fact may not fill in the gaps in the evidence to support a conviction." *Harmon*, 2012 IL App (3d) 110297, ¶ 17. Based on the facts presented at trial, I would find that the trial court "stretched the limited circumstantial evidence beyond a reasonable inference." *People v. Rouser*, 199 Ill. App. 3d 1062, 1066 (1990); *cf. People v. Moreira*, 378 Ill. App. 3d 120, 130 (2007).

¶ 80    Here, as in *People v. Sams*, 2013 IL App (1st) 121431, ¶ 16, since "the State presented no physical evidence connecting [respondent] to the [bike]," and no evidence that the respondent knowingly intended to permanently deprive the owner of her specific bicycle, we should find

- 17 -

that the State has not met its burden of proving beyond a reasonable doubt that respondent is guilty.

¶ 81 Finally, the respondent raises the issue of due process, *i.e.*, that the hearsay statements went unchallenged by cross-examination, which is a constitutional question and would have a beyond a reasonable doubt standard. In determining whether a constitutional error is harmless, the test to be applied is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained. *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). The majority is treating the issue as a straightforward harmless error question, which ignores the fact, as seen from the above transcript, that the judge clearly relied on the hearsay in rendering her verdict. It is abundantly clear that the error contributed to the finding of guilty and that Jovan's due process, that is the right to confront witnesses, was violated. That is, the error was not harmless.

¶ 82 I believe that here, where the layers of hearsay included Bravi's statement to the police, the police review of a craigslist ad that had no foundation whatsoever, and the police testimony about the investigation as a result of the ad–none of which was admitted as substantive evidence–the evidence in question is like a hall of mirrors: it is hard to tell who is the real witness, and it is clear that the respondent could not challenge any of it by cross-examination. Since cross-examination is the bedrock of a criminal trial, its absence cannot be ignored.

¶ 83 When the trial judge ruled that the craigslist evidence and the discussion about it would not be admitted except for the purpose of the course of the investigation, and then relied heavily on it in her finding of guilt, she sprang a surprise on the defense that they could not possibly have predicted, nor could they effectively rebut, except in this appeal. This respondent, having finished his probation, is no longer able to file a postconviction petition, so this appeal is his only option.

¶ 84 For the reasons stated, I would reverse respondent's theft conviction and adjudication of delinquency. *People v. Cowans*, 336 Ill. App. 3d 173, 181 (2002); see *Burks v. United States*, 437 U.S. 1, 16 (1978).