# Illinois Official Reports

## Appellate Court

---

**People v. Risper, 2015 IL App (1st) 130993**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODERIC RISPER, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-0993 |
| Filed | June 4, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-5480; the Hon. Michael Brown, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Benjamin A. Wolowski, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Jocelyn M. Schieve, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a jury trial, defendant Roderic Risper was convicted of attempted robbery and sentenced to the Cook County department of corrections boot camp. On appeal, defendant contends that he was denied his right to a fair trial due to three references made at trial to the identification of defendant as a perpetrator of the crime by a witness who ultimately did not testify–the first by the State in its opening statement, and twice later by police officers during their testimony. Defendant argues that these references violated his right to confront the witnesses against him and denied him a fair trial.

¶ 2     We affirm. We agree that each of these references to a nontestifying witness's identification of defendant as a culprit was error, but we find the errors harmless beyond a reasonable doubt.

¶ 3     Defendant was tried on charges of attempted robbery and aggravated battery. Prior to trial, defendant filed a motion *in limine* requesting that the court bar the State from presenting hearsay testimony from Chicago police officer Isagany Peralta. Specifically, defendant noted that at a previous hearing on his motion to suppress, Officer Peralta had testified that he arrested defendant and codefendant, Albernard Clinton,[1] after an unidentified Chicago Transit Authority (CTA) employee told him "those two were involved." Defendant argued that under the investigatory procedure exception to the hearsay rule, an officer's testimony must be limited to describing how he conducted the investigation and cannot include the substance of an out-of-court statement to prove the truth of the matter asserted.

¶ 4     At a hearing on the motion, the State acknowledged that the CTA employee was never identified and was not available to testify as a witness. The trial court ruled that Officer Peralta could testify that he spoke with a CTA employee, and that after doing so, he was directed toward a group of individuals. The court instructed the State that it could not use that testimony to infer the identity of defendant or codefendant.

¶ 5     During *voir dire*, the court informed the jury panel that the list of potential witnesses included Gerardo Cortes, Cynthia Kindle, Jennifer Heim[2] and Sascha Mehlhase, as well as four police officers. During her opening statement, the prosecutor stated that the evidence would show that defendant and codefendant were part of a group of men that repeatedly punched Gerardo Cortes and tried to steal his cell phone while he was riding on a CTA train. The prosecutor stated "there were other individuals that saw the whole thing, that had a clear view of his face, and they will be able to identify this defendant, Roderic Risper, as the same defendant that was on that train. The same defendant that partook in the punching and beating of Gerardo Cortes." The prosecutor explained that defendant and codefendant were detained by police, and then stated "[a] couple of minutes, not even 5 minutes later, Cynthia Kindle, Gerardo Cortes, and another witness had already positively identified this defendant, Roderic Risper, and Albernard Clinton as the same two individuals that punched, beat, and tried to take Mr. Cortes's iPhone."

---

[1]Codefendant's case was severed from defendant's; he is not a party to this appeal.

[2]Various spellings of Heim's last name appear throughout the record; we use this spelling for consistency.

¶ 6     At trial, Gerardo Cortes testified that, at approximately 4:30 p.m. on March 25, 2011, he was riding alone on the CTA blue line train, sitting in an aisle seat, and listening to music on his iPhone through headphones when a group of four or five people surrounded him, sat down and looked at him. Cortes felt uneasy and moved his phone lower on his lap. Defendant, who wore his hair in small twists, sat across the aisle from Cortes to his right, and Cortes could see his profile. Codefendant, who had darker skin and was short and stocky, sat behind Cortes. Most of the group wore dark clothing, but codefendant wore a tan jacket. Cortes felt a punch to the back of his head, and the people surrounding him started punching him repeatedly. Someone in the group told Cortes, "Give it up. Give it up," and reached for the iPhone in his lap, which Cortes then placed inside his pocket. The group continued punching Cortes for about a minute with defendant standing to Cortes's right. When the train stopped at the Clark and Lake station, the group ran off the train, and when Cortes looked up, one of the men punched him in the right eye, giving him a black eye.

¶ 7     Cortes testified that after the group fled the train, two women approached him and said they saw everything that had happened. Cortes and the women, one of whom was Cynthia Kindle, went upstairs and outside, where an ambulance and police were waiting. Cortes briefly told the police what happened, and they told him and the women to get inside the back of the ambulance. About five minutes later, the police brought defendant and codefendant to the ambulance, told Cortes and the women to look out the back window, and asked if they could identify the men. Cortes identified defendant and codefendant as two of the men from the group that beat him on the train. Specifically, Cortes identified defendant as the man who sat to his right and codefendant as the man who sat behind him. In court, Cortes also identified photographs of defendant and codefendant as the two men from the train who sat to the right of him and behind him, respectively, and testified that they were the same men he identified from the ambulance.

¶ 8     Cortes testified that four days before trial, defense counsel and defense investigator Mary Waller Clemons arrived at his dorm room unannounced to question him. He told them that he was not required to speak with them but did so anyway. Cortes acknowledged that he told them that he did not recall much about the incident because it had occurred two years earlier. He further acknowledged telling them that he never looked any of his attackers in the face but saw their side profiles. Cortes explained that he told counsel that he did not make an identification of defendant because he interpreted an "identification" to mean looking someone in the eye; he testified that he was able to identify defendant from his "characteristic traits," including his hair and his profile. Cortes testified that he did not see defendant hit him but felt punches to the right side of his body, and the only person standing to his right was defendant.

¶ 9     Cynthia Kindle testified that she was riding the CTA blue line train with her coworker, Jennifer, when she observed defendant walking through the emergency doors, going from car to car, looking at people who were on their cell phones. Kindle described defendant as a tall African-American man with twists in his hair, dressed in mostly black clothing. Defendant walked through their car twice and returned a third time with four other men. The group of men stopped by Cortes, who was sitting four rows in front of Kindle facing her. Defendant stood to the side of Cortes in the aisle, two men stood behind Cortes, and one man stood at the doors. Kindle had an unobstructed view of defendant's profile for approximately a minute. As the train neared the Clark and Lake station, the men began punching Cortes and

continued hitting him for more than a minute. When the train pulled into the station, the man standing near the door yelled "[l]et's go," and when the doors opened, the group of men, including defendant, ran from the train.

¶ 10    Kindle testified that she called 911 and gave the dispatcher descriptions of the men. Kindle and Jennifer then approached Cortes to see if he was okay. They left the train together and spoke with the conductor. Upstairs at the street level, they spoke with police officers. Kindle told an officer that the offenders were a group of five men, the majority of them dressed in black, but one man wore a purple or blue leather jacket. She did not recall telling police that one man wore a cream-colored jacket. She described one of the men as tall with twists in his hair, and another man as short and stocky with a short haircut. Cortes, Kindle and Jennifer got into the back of an ambulance. Five minutes later, the police returned with two suspects, and Kindle looked through the back window of the ambulance and recognized them as two of the men who had hit Cortes. Kindle identified defendant as the man with twists in his hair whom she saw doing most of the hitting, and the second man was the short and stocky man who had been standing behind Cortes. In court, Kindle identified photographs of defendant and codefendant as two of the men from the train who hit Cortes and testified that they were the same men she identified from the ambulance.

¶ 11    Chicago police officer Isagany Peralta testified that he and his partner, Officer Alvarez, responded to a call of a battery in progress involving five or six juvenile men hitting one person. Officer Peralta testified that when they entered the train station, CTA personnel directed them to "the location where they thought offenders from or people involved in the actual fight were still." Defense counsel voiced a hearsay objection. In overruling that objection, the court defined hearsay for the jury and explained that, in this instance, the officer was explaining the steps in his investigation, which is an exception to the hearsay rule, and that the jury should consider his statement only for that purpose and should not consider the actual substance of his statement.

¶ 12    Officer Peralta further testified that after speaking with CTA personnel, he and Officer Alvarez headed toward the upstairs platform and encountered Cortes being treated by medical personnel. After speaking with Cortes, who gave them a brief description of the offenders, the officers went to the upstairs platform on the south side of the tracks and saw five or six juvenile men running on the north side platform. As the officers ran across to the north platform, the group of men ran through the exit to the street and fled the area. Officer Peralta testified that he was then "directed by the CTA agent and standing witnesses that people that were also involved were still there." The trial court overruled defense counsel's objection and denied her request for a sidebar. The officer testified that he was directed to defendant and codefendant, both of whom were wearing dark clothing, and one of whom had twists in his hair. The officers detained defendant and codefendant and brought them downstairs to the ambulance, where they were identified. The prosecutor asked Officer Peralta who identified defendant, and he said, "the actual victim and then there [were] three witnesses standing by at the time."

¶ 13    The trial court granted defense counsel's request for a sidebar, at which time counsel moved for a mistrial arguing, in relevant part, that the State presented identification testimony from the victim and one witness, not three witnesses, and unless the State was going to call two more witnesses who would identify defendant, his right to confrontation was violated. The court ruled that it would strike that portion of Officer Peralta's testimony

- 4 -

because identification testimony was only presented from Cortes and Kindle, and it would instruct the jury to disregard that testimony. The court stated that there were apparently two additional witnesses whom the State had decided not to call and that the additional identifications would not be allowed. The court further stated that it could cure the problem by striking the testimony and instructing the jury and that the circumstances did not warrant a mistrial.

¶ 14　Defense counsel then alleged that the prosecutor intentionally elicited the additional identification testimony from Officer Peralta, noting that in her opening statement, the prosecutor stated that defendant had been identified by Cortes, Kindle and another witness. The prosecutor denied that the elicitation was intentional. The trial court pointed out that defense counsel did not object during the State's opening statement. The prosecutor explained that she was trying to call one other eyewitness, Jennifer Heim, to testify in rebuttal. The court again noted that counsel did not object during the opening statement and denied the motion for a mistrial.

¶ 15　When the trial resumed, the court informed the jurors that the last question and answer were stricken and instructed them to disregard that testimony. Officer Peralta then testified that Cortes and Kindle both identified defendant and codefendant. Officer Peralta acknowledged that one of the men in the group that fled the scene was wearing a tan jacket. He also acknowledged that defendant and codefendant did not run from police, but were walking away from them.

¶ 16　Chicago police detective Michael Lynch testified that when he was assigned to investigate the offense in this case, he learned that two individuals had been identified during a show-up at the scene. When the prosecutor asked Detective Lynch to explain what a positive show-up is, he replied "[t]hey were identified by the victim and the two witnesses." Defense counsel objected on the basis of hearsay, and the prosecutor responded that the testimony was to describe the detective's course of conduct. The trial court overruled the objection and instructed the jury to consider the testimony for the limited purpose of explaining what action the detective took next. The court specifically admonished the jury not to consider the substance of the testimony–that the offenders were identified by the victim and two other persons–for the truth of that statement, but only for the purpose of the detective explaining what he did next.

¶ 17　Detective Lynch then explained that a show-up is conducted to identify the offender. The detective testified that he spoke with Cortes and Kindle and learned that each of them had identified defendant and codefendant at the scene. Detective Lynch later spoke with defendant, and after Lynch advised him of his *Miranda* rights, defendant told the detective that he had been on the train walking from car to car with a group of men looking for seats, and when he left the train with his friend, he looked back and saw those men hitting Cortes and demanding his phone. Defendant said a man with dreadlocks punched Cortes in his right eye, and as defendant and his friend walked off the train, the group of men ran past them. Detective Lynch acknowledged that Kindle told him that the man she saw walking between train cars and hitting Cortes was wearing a cream-colored jacket, not dark clothing. Kindle also told him that one man wore purple and had dreadlocks, and three others wore black. Detective Lynch testified that no video of the incident was available from the CTA.

¶ 18　Defendant testified that he and codefendant, whom he only knew as "Alpha," were on the blue line train and planned to transfer to the green line train at the Clark and Lake station to

go home. The train was crowded, and they walked to another car to find seats and sat down, at which point defendant listened to his iPod with headphones. A few minutes later, three unknown men walked through the door from another car and sat behind them. When the train arrived at the station, defendant and codefendant walked to the exit, and when defendant looked back to see if he forgot anything, he saw the unknown men hitting Cortes and trying to take his phone. One man wore a purple jacket and had dreadlocks, and another man wore a beige jacket and had short hair. Defendant and codefendant left the train, and when they were on the escalator going to the green line platform, the three unknown men ran past them. Defendant was sitting on a bench waiting for the train when the police approached and grabbed him. They brought him down to the street and told him to stand near an ambulance, then brought him to the police station.

¶ 19 Defendant did not recall being advised of his *Miranda* rights but told the officers what he saw on the train. Defendant denied hitting Cortes and denied knowing the men who attacked him. Defendant acknowledged that on the day of the attack, he wore dark clothing and had twists in his hair. He further acknowledged that he sat across the aisle from Cortes for 10 to 15 minutes, but testified that codefendant sat with him next to the window, rather than behind Cortes.

¶ 20 Defense investigator Mary Waller Clemons testified that she accompanied defense counsel to interview Cortes, and after initially telling them that he did not have to speak with them, he answered their questions. Cortes told them that he could not identify the people who attacked him other than to say that they were black men and there were more than two of them. Cortes further stated that he could not remember anything about that day.

¶ 21 During jury instructions, the court admonished the jurors that they should disregard any questions that were withdrawn or to which objections were sustained and to disregard any testimony that was stricken. The court further advised that any evidence that was received for a limited purpose should not be considered for any other purpose. In addition, the court explained that opening statements are made to acquaint the jurors with the facts the attorneys expect to prove and are not evidence, and that any statement by counsel that was not based on properly admitted evidence at trial should be disregarded. Following deliberations, the jury found defendant guilty of attempted robbery but not guilty of aggravated battery.

¶ 22 In his posttrial motion, defendant argued that the trial court erred when it allowed inadmissible hearsay that an unknown CTA employee identified defendant and codefendant. Defendant also argued that Jennifer Heim's out-of-court identification of defendant was admitted three times during the trial–in the prosecutor's opening statement and during the testimony of both Officer Peralta and Detective Lynch. The trial court noted that defendant testified that he was on the 2 train at the time of the attack, just as the State's witnesses had testified, and thus identification was not an issue. The court expressly found that defendant was not prejudiced by any identification testimony because he testified that he was there. The court explained that the real issue was whether defendant was responsible for the charged offenses and noted that the jury found him responsible for the attempted robbery, but not the aggravated battery. The court found that a rational jury could decide the case exactly as it did here and denied defendant's posttrial motion. Thereafter, the trial court sentenced defendant to the Cook County department of corrections boot camp.

¶ 23 On appeal, defendant contends that he was denied his right to a fair trial where a hearsay identification allegedly made by an unidentified, nontestifying witness was mentioned by the

prosecutor in her opening statement and then referenced by Officer Peralta and Detective Lynch during their testimony.

¶ 24    We first consider the prosecutor's remark in opening statement. Defendant contends that the prosecutor included a hearsay identification in her opening statement when she stated that Cortes, Kindle, "*and another witness* had already positively identified this defendant" and codefendant as the two men who beat Cortes and tried to take his phone. (Emphasis added.) Defendant argues that the State did not call a third eyewitness who identified him, and therefore, the statement was inadmissible hearsay.

¶ 25    This is not a "hearsay" objection *per se*, because an opening statement is not evidence, and the prosecutor's comments are not sworn testimony. *People v. Kliner*, 185 Ill. 2d 81, 127 (1998). The question here is whether it was unfair for the State to mention the substance of this third, unnamed individual's testimony when, in fact, that witness did not ultimately testify and defendant was unable to cross-examine that witness on that substance.

¶ 26    Initially, the State claims that defendant forfeited this issue for review because he did not make a timely objection during the prosecutor's opening statement, instead raising the issue well after the remark was made, during a subsequent sidebar during Officer Peralta's testimony. But we agree with defendant that he could not reasonably be expected to object during the opening statement, at which point in time he had no idea that the State would fail to call this third identification witness. An objection is untimely if it is not asserted as soon as the grounds for the objection become apparent. *People v. Koch*, 248 Ill. App. 3d 584, 593 (1993); *People v. Trefonas*, 9 Ill. 2d 92, 98 (1956). At the time of the opening statement, such grounds were not apparent to defendant. Indeed, even at the point in time when defendant did object, the State was still claiming that it wanted to call this third witness in rebuttal. We find no forfeiture here.

¶ 27    We also agree with defendant that the State's reference to "another witness" in its opening statement was improper. The purpose of an opening statement is to apprise the jury of what each party expects the evidence to prove. *People v. Leger*, 149 Ill. 2d 355, 392 (1992). It is thus "improper for counsel to make opening statements about testimony to be introduced at trial and then fail to produce that evidence." *Kliner*, 185 Ill. 2d at 127. But our supreme court has held that reversible error in this context only occurs "where the prosecutor's opening comments are attributable to deliberate misconduct of the prosecutor *and* result in substantial prejudice to the defendant." (Emphasis in original.) *Id*.; see also *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 138. We are required to find each of those elements before reversing, and here we find neither.

¶ 28    First, defendant on appeal explicitly "does not contend that there was any kind of bad faith on the part of the prosecution during its opening statements," nor did the trial court find any. From our independent review of the record, we see no basis on which we would disagree with defendant's concession.

¶ 29    More importantly, we further find that defendant did not suffer substantial prejudice as a result of this improper comment. First, there was significant, credible evidence at trial that tied defendant to this crime, including the identification of defendant by two different witnesses. Second, the trial court instructed the jurors, at both the beginning of the trial and at its conclusion, that opening statements are not evidence, and that they should disregard any statement not based on the evidence admitted at trial. We believe these instructions were sufficient to cure the erroneous remark in opening statements. See *People v. Peeples*, 155 Ill.

2d 422, 482 (1993) (prosecutor's reference to defendant as " 'human predator' " in opening statement was error but was cured by trial court twice instructing jurors that opening statements were not evidence); *Kliner*, 185 Ill. 2d at 127-28 (prosecutor erred in opening statement by telling jury that defendant purchased certain firearms when State did not introduce such evidence and prosecutor "should have known" he would be barred from doing so, but error was not prejudicial where trial court twice instructed jury that opening statements were not evidence); *People v. Butler*, 12 Ill. App. 3d 541, 548 (1973) (prosecutor's promise in opening statement that witness would testify as to various facts was error when State did not call witness, but error was not prejudicial in light of prosecutor's admission in opening statement that opening statements were not evidence); *People v. Lampton*, 108 Ill. App. 3d 41, 46 (1982) (prosecutor's comment in opening statement that witness would describe shooter did not cause substantial prejudice, even though witness never testified, where both counsel and trial court informed jury that opening statements were not evidence). The strength of the evidence against defendant and the curative effect of the jury admonishments convince us that defendant suffered no substantial prejudice.

¶ 30    Defendant next argues that the State introduced inadmissible hearsay evidence that prejudiced his right to a fair trial and violated his right to confront the witnesses against him. Specifically, defendant argues that, on two separate occasions at trial, State witnesses testified that various unidentified, nontestifying witnesses identified defendant as one of the perpetrators of the crime in question. The first one we will consider is the testimony of Detective Lynch, who testified that, when he arrived at the scene, defendant and codefendant "were identified by the victim and two witnesses."

¶ 31    Initially, the parties disagree on our standard of review. The State claims that we should review the trial court's rulings on the hearsay challenges for an abuse of discretion. Defendant argues that the appropriate standard of review is *de novo*, claiming that the "surrounding facts" are not in dispute and that the issue raised is purely a question of law. He argues that this court is reviewing the trial court's interpretation of the hearsay rules.

¶ 32    Typically, evidentiary rulings are within the trial court's sound discretion and will not be disturbed on review unless the court has abused that discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). This is a highly deferential standard, where error is found only if the trial court's ruling is so arbitrary or fanciful that no reasonable person would agree with the view adopted by the court. *Id*. The reason for this deferential standard is that the trial court's decision to admit evidence is often not made in isolation but, rather, after consideration of many circumstances, including questions of prejudice and reliability, which the trial court is in a more suitable position to analyze than a reviewing court. *Id*.

¶ 33    But this deferential standard is not universally applicable. *Caffey* itself noted that *de novo* review of evidentiary rulings is appropriate in instances where the trial court is alleged to have applied an " 'erroneous rule of law.' " *Id*. (quoting *People v. Williams*, 188 Ill. 2d 365, 369 (1999)). Moreover, where the credibility of the witnesses is not at issue, no relevant facts are in dispute, and the court's ruling is not related in any way to a balancing of probity versus prejudice–in other words, when the considerations on which we typically defer to the trial court are not present–and the only issue for the reviewing court is the correctness of the trial court's legal interpretation, *de novo* review is appropriate. *People v. Aguilar*, 265 Ill. App. 3d 105, 109 (1994). In *Aguilar*, which our supreme court cited as an example of a proper *de novo* review of an evidentiary ruling (see *Caffey*, 205 Ill. 2d at 89), the court considered

whether the trial court had properly interpreted the admissions exception to the hearsay rule. Because the case "involve[d] a legal issue and did not require the trial court to use its discretion regarding fact-finding or assessing the credibility of witnesses," the court found *de novo* review appropriate. *Aguilar*, 265 Ill. App. 3d at 109; see also *People v. Mitchell*, 165 Ill. 2d 211, 230 (1995) (though review of decision on motion to suppress was typically subject to manifestly-erroneous standard, "[*d*]*e novo* review by this court is appropriate *** when, as here, neither the facts nor the credibility of witnesses is questioned").

¶ 34    We apply a *de novo* standard to the question before us. None of the factors that would typically warrant the deferential standard are present here. There is no argument by any party that casts the slightest doubt on the credibility of Detective Lynch's account of events surrounding the alleged hearsay statements. That is, defendant does not deny that Detective Lynch spoke with nearby witnesses who identified defendant as one of the perpetrators. There is no disputed issue of fact, no question as to Lynch's demeanor or credibility, at least not with regard to the alleged hearsay testimony. There was no discussion of any balance of the probative nature of the evidence versus its prejudicial impact, or of evidence being cumulative or repetitive. To the contrary, the trial judge engaged in a purely legal analysis in ruling on that testimony. As our review is limited to the correctness of that legal analysis, the review is *de novo*.

¶ 35    Hearsay is a statement, other than one made by the declarant while testifying at trial or in a hearing, offered in evidence to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Jan. 1, 2011). Due to its feared lack of reliability, it is inadmissible unless it fits within an exception recognized by state statute, case law, or the Illinois Rules of Evidence. *Caffey*, 205 Ill. 2d at 88; see Ill. R. Evid. 802 (eff. Jan. 1, 2011). Testimony regarding an out-of-court statement that is offered to prove something other than the truth of the matter asserted therein is, by definition, not hearsay. *People v. Banks*, 237 Ill. 2d 154, 180 (2010); Ill. R. Evid. 801(c) (eff. Jan. 1, 2011).

¶ 36    In addition, while defendant has a constitutional right to confront the witnesses against him (U.S. Const., amend. VI), "[t]he confrontation clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' " *Banks*, 237 Ill. 2d at 182 (quoting *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004)). Thus, if defendant cannot establish that challenged testimony is hearsay, he likewise cannot prevail on a claim under the confrontation clause.

¶ 37    Defendant contends that Detective Lynch's testimony constituted *per se* inadmissible hearsay identification that violated his right of confrontation. This testimony arose after Detective Lynch explained that when he arrived on the scene, a "positive show-up" had already taken place. When asked to "please explain what a positive show-up means," Detective Lynch responded that defendant and codefendant "were identified by the victim and two witnesses." As we have already explained, only two witnesses–the victim and Ms. Kindle–testified at trial as to defendant's involvement in the crime. This third witness did not testify.

¶ 38    Defense counsel immediately objected on the basis of hearsay. The State responded that the testimony was relevant to the detective's "course of conduct." The trial court then addressed the jury, informing it that it was overruling the hearsay objection and instructing the jury to consider the testimony for the limited purpose of explaining what action the detective took next. The court specifically admonished the jury not to consider the substance

of the testimony–that the offenders were identified by the victim and two other persons–for the truth of that statement, but only for the purpose of the detective explaining the progression of the actions he took.

¶ 39    The trial court allowed the challenged testimony for this limited purpose, based on the long-settled doctrine that a law enforcement officer may testify about statements made by others, such as victims or witnesses, when such testimony is offered not to prove the truth of the matter asserted, but instead to show "the investigative steps taken by the officer leading to the defendant's arrest." *People v. Pulliam*, 176 Ill. 2d 261, 274 (1997). This is not an exception to the hearsay rule; it is a relevant basis for admission of the testimony other than the truth of the matter asserted in those statements and, as such, is not hearsay in the first instance. *People v. Gacho*, 122 Ill. 2d 221, 248 (1988). The relevance of the testimony lies in explaining to the jury how a law enforcement investigation led to the defendant. Without such testimony, a jury might not understand how an officer got from point A to point C; it might appear to the jury that the officer had less than a valid basis for considering the defendant to be a suspect. See *People v. Jones*, 153 Ill. 2d 155, 161 (1992) ("Any chronological retelling of the events is going to have to include the point in time when the defendant became a suspect."); *People v. Trice*, 217 Ill. App. 3d 967, 977 (1991) (trial court properly allowed such evidence to explain why police focused investigation on defendant; without it, trial court properly feared that jury would be " 'left with the impression that this investigation fell out of thin air' ").

¶ 40    Because it is not hearsay, testimony recounting the steps taken in a police investigation does not violate defendant's sixth amendment right to confront the witnesses against him. *People v. Henderson*, 142 Ill. 2d 258, 304 (1990); *People v. Peeples*, 377 Ill. App. 3d 978, 986 (2007). This holds true even if, as a result of this testimony, a jury might be able to infer "that the police began looking for a defendant as a result of what nontestifying witnesses told them." *Henderson*, 142 Ill. 2d at 304; *Gacho*, 122 Ill. 2d at 248 (such testimony is not hearsay, even if "the inference logically to be drawn therefrom is that the information received motivated the officers' subsequent conduct" (internal quotation marks omitted)).

¶ 41    But the critical caveat to this doctrine is that the testimony cannot reveal the *substance* of the statements made by the nontestifying witnesses to the officer in the course of the investigation. *Henderson*, 142 Ill. 2d at 304 (such testimony is relevant "as long as the testimony does not gratuitously reveal the substance of [the nontestifying witnesses'] statements and so inform the jury that they told the police that the defendant was responsible for the crime"). In *Gacho*, for example, an officer testified that he visited the victim at the hospital, interviewed the victim, and then went out looking for defendant as a suspect. This testimony was not hearsay because the substance of what, precisely, the victim told the officer had not been recounted to the jury. *Id*. But if the substance of that conversation had been admitted–if the officer had testified that the victim identified the defendant–it would have constituted impermissible hearsay. *Id*.; *Jones*, 153 Ill. 2d at 160 (noting that "[i]n *Gacho*, the substance of the conversation would have gone to the very essence of the dispute: whether the defendant was the man who committed the crime" and would have been impermissible hearsay if admitted). Thus, while the State is entitled to provide a logical recounting of the sequence of events in an investigation that led the police to defendant, an officer may not testify to the content of any statement he or she received. *In re Jovan A.*, 2014 IL App (1st) 103835, ¶ 23.

¶ 42    In this case, it is clear that, when Detective Lynch testified that defendant and codefendant "were identified by the victim and the two witnesses," including in that group a nontestifying third witness, the detective's testimony went beyond a mere recounting of investigative steps to reveal the content of what the witnesses told him. It was thus inadmissible hearsay. Because defendant was not permitted to cross-examine this third, nontestifying witness as to the credibility of his or her identification, defendant's right to confront the witnesses against him was violated. See, *e.g.*, *People v. Johnson*, 116 Ill. 2d 13, 28 (1987).

¶ 43    Confrontation errors do not automatically mandate reversal, however. *Id.* We will affirm defendant's conviction if we conclude that the error was harmless beyond a reasonable doubt. *Id.*; *Chapman v. California*, 386 U.S. 18, 24 (1967). In determining whether a constitutional error is harmless beyond a reasonable doubt, we may consider whether the excluded evidence contributed to the conviction; whether the evidence against defendant was overwhelming; and whether the excluded evidence was cumulative or duplicative of other evidence. *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981).

¶ 44    We believe that the State has carried its burden of showing that this error was harmless beyond a reasonable doubt. First and foremost, the trial court immediately admonished the jury that it could only consider Detective Lynch's testimony for the limited purpose of understanding why the detective proceeded to interview defendant, and not for the truth of the statements made by the witnesses to Detective Lynch. The trial court also instructed the jury, at the close of trial, that it should disregard questions and answers that had been ruled on by the court as improper. We presume a jury will follow the instructions from the trial court. *People v. Taylor*, 166 Ill. 2d 414, 438 (1995); *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 100 (2008). Further, as we have already explained above, we find that the evidence against defendant was strong. Two individuals, the victim and Ms. Kindle, identified defendant as a perpetrator of the crime, and neither was significantly impeached. Ms. Kindle, in particular, identified defendant every step of the way during the commission of the crime, from his initial scouting of a potential victim as he moved between train cars to his participation in the attempted robbery. Contrary to defendant's assertion, we did not find any significant impeachment or challenge to her testimony. In light of the strength of the evidence and the curative effect of the instructions to the jury, we find the error harmless beyond a reasonable doubt.

¶ 45    The final error asserted by defendant concerns the testimony of Officer Peralta, who testified that defendant was identified by "the actual victim and then there [were] three witnesses standing by." We need not concern ourselves with the appropriate standard of review on this hearsay/confrontation clause claim–*de novo* versus abuse of discretion–because the State makes no attempt to defend the admissibility of this testimony, thereby forfeiting any argument that the testimony was not improper hearsay. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). We will thus proceed directly to consider whether this error was harmless beyond a reasonable doubt. *Johnson*, 116 Ill. 2d at 28; *Wilkerson*, 87 Ill. 2d at 157.

¶ 46    As the State notes, the trial court sustained defendant's prompt objection to the testimony and then instructed the jury that "the last question and answer will be stricken. You are to disregard the last question and answer." The prompt sustaining of an objection, combined with a proper jury instruction to disregard the testimony, is typically sufficient to cure an

error involving inadmissible hearsay. *People v. Mims*, 403 Ill. App. 3d 884, 897 (2010). We presume that the jury followed this instruction. *Id.*; see *Taylor*, 166 Ill. 2d at 438; *Aguirre*, 382 Ill. App. 3d at 100.

¶ 47 We recognize that defendant has identified three instances where reference was made to at least one non-testifying witness's identification of defendant–one in opening statements, and two during testimony from police officers. Defendant argues that, even if none of these errors independently warranted a new trial, they do so cumulatively. We cannot agree. In the two instances where defendant objected, the trial court promptly ruled, sustaining the objection to the Peralta testimony and instructing the jury to disregard it, and instructing the jury to consider the testimony only as to Detective Lynch's course of conduct and not as to the truth of the statements made to him by the nontestifying witnesses. And though defendant did not object to the improper statement made in opening argument, the trial court twice instructed the jury that opening statements are not evidence. In a similar fact pattern where references to nontestifying witnesses' identification of defendant were introduced during trial and during counsel's statements to the jury, our supreme court found that the trial court's instructions to the jury were sufficient to cure any prejudice. *Jones*, 153 Ill. 2d at 161. But we do not rest on the trial court's instructions alone. We also find that the State presented strong evidence of defendant's guilt, as we have explained above at length. We do not see how these cumulative errors made any meaningful contribution to the guilty verdict; we find no basis for believing that, absent these errors, a different verdict would have resulted. We therefore affirm defendant's conviction.

¶ 48 Affirmed.