2023 IL App (1st) 200720-U

SIXTH DIVISION
February 3, 2023

No. 1-20-0720

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 13068 |
| | ) | |
| QUENTIN WILSON, | ) | The Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mikva concurred in the judgment.
Justice Oden Johnson dissented.

**ORDER**

¶ 1   *Held*:   We affirm defendant's conviction for delivery of a controlled substance over his contention that the trial court erred in denying his motion for a mistrial.

¶ 2   Following a jury trial, defendant Quentin Wilson was found guilty of delivery of 1 gram or more but less than 15 grams of a substance containing heroin (720 ILCS 570/401(c)(1) (West 2018)) and sentenced to 8 years' imprisonment. On appeal, Wilson contends the trial court erred by denying his motion for a mistrial where the prosecutor elicited "highly prejudicial hearsay testimony." Although we find that the State gratuitously introduced hearsay identification

testimony that was not cured by the trial court's limiting instruction, we conclude the error was harmless because the evidence of Wilson's guilt was overwhelming. Therefore, we affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4      Wilson was charged by indictment with delivery of 1 gram or more but less than 15 grams of heroin arising from his alleged sale of heroin to an undercover police officer on January 23, 2018.

¶ 5      At trial, Chicago police detective Kevin Connolly testified that on January 23, 2018, he was working undercover to purchase narcotics from suspected drug dealers. At approximately 12:55 p.m., he and his team were working near Chicago Avenue and Homan Avenue. They were not targeting specific individuals.

¶ 6      Connolly walked southbound on Homan Avenue and a man sitting on a porch "attempted to make contact." The State asked Connolly what the man said. Defense counsel objected based on hearsay, and the trial court overruled the objection and informed the jury that the statement would not be considered for the truth of the matter asserted, but only to show the conduct of the officer. Connolly then testified that the man stated that "someone named Q was out there selling yellow and black." Defense counsel again objected.

¶ 7      In a sidebar, defense counsel argued that the testimony "has gone far beyond course of conduct" and the State was introducing a statement from a nontestifying witness "almost making an identification" of Wilson "by identifying the first initial of his name," which unusually began with the letter "Q." Defense counsel moved for a mistrial. The State argued that the statement related to the officer's course of conduct because it addressed the next steps of the officer's investigation.

¶ 8       The trial court commented that Connolly's testimony "does go to course of conduct," but the State could adduce whether the man directed Connolly to any location, and the officer's next steps, without eliciting the content of the conversation. The trial court denied the motion for a mistrial.[1] In the presence of the jury, the trial court sustained the objection and instructed the jury to "[d]isregard the question and the partial answer."

¶ 9       Connolly stated that the man directed him to "Chicago and Homan" and walked with him. As Connolly approached Chicago Avenue, he heard Wilson, whom he identified in court, call "yo" from an alley. Connolly approached Wilson to "[w]ithin arm's reach," and clearly saw his face. Wilson asked Connolly "how many," which Connolly understood as referring to bags of heroin costing approximately $10 each. Connolly responded, "four." Connolly followed Wilson to an alley, and Wilson told Connolly and the man to stand by a nearby pole. Wilson briefly walked into the rear yard of a residence, out of Connolly's view, before calling "yo" again. Connolly and the man approached Wilson, who handed Connolly four Ziploc bags containing white powder, which were encased in black and yellow tape. Connolly purchased the suspected heroin with $40 of "prerecorded 1505 funds."

¶ 10      Connolly left and passed his team member Chicago police officer Paul Sandoval's undercover vehicle, which was parked in the alley, and informed him that the transaction was "positive." Connolly also radioed his team and described Wilson and his clothes, including that he was wearing a brown jacket over a gray hoodie and blue jeans. He later learned that other team member officers stopped Wilson.

---

[1]The trial court implicitly denied the motion during the sidebar hearing. It subsequently clarified in a sidebar after Connolly's testimony that the motion was denied.

¶ 11    Approximately an hour after the transaction, Connolly went to the police station, viewed a photo array, and identified Wilson. Connolly identified the photo array and his signed advisory form, which are included in the record on appeal. Connolly acknowledged that he did not consent to having the photo array recorded, "[d]ue to the undercover nature of [his] assignment." Connolly also inventoried the suspect narcotics, which he identified in court.

¶ 12    Connolly wore a body camera during the incident and the State published the footage, which Connolly narrated. The footage does not include audio. The footage shows Connolly walking down a residential street when a man approaches him from a porch and speaks to him. They walk together and encounter another man wearing a gray hooded sweatshirt and brown jacket with his face obscured from the camera. Connolly identified this man as Wilson. In the video, Wilson leads Connolly and the man to an open lot next to an alley. The footage shows Connolly waiting by a pole and approaching Wilson, followed by Wilson and Connolly exchanging items, which Connolly identified as Wilson giving him the suspect heroin and Connolly handing Wilson money. Connolly then walks down the alley and speaks with the driver of a vehicle, Sandoval.

¶ 13    On cross-examination, Connolly stated that he had never met Wilson before, and Wilson was wearing a heavy winter coat with a raised hood. After learning the officers arrested someone, Connolly did not drive past the area to see if they stopped the person from whom he purchased the narcotics. The funds used to purchase the narcotics were never recovered.

¶ 14    Sandoval testified that he parked his covert vehicle on Homan Avenue and could see "the mouth of the alley" north of Chicago Avenue. With nothing blocking Sandoval's view, he observed Connolly and another man meet Wilson and follow him to another location. Sandoval described Wilson to his team over the radio.

¶ 15    Next, Sandoval relocated so he could see southbound into the alley where Connolly and Wilson moved. Wilson removed small objects from his pocket and handed them to Connolly in exchange for money, which Sandoval believed was a narcotics transaction. Connolly then walked away and informed Sandoval, "it's positive." Sandoval informed the team regarding Wilson's location, and other officers stopped him.

¶ 16    On cross-examination, Sandoval stated that he was not equipped with a camera or video recording equipment, and never viewed a photo array or lineup. When Sandoval observed the narcotics transaction, he was half a block from Connolly and Wilson.

¶ 17    Chicago police officer Carlos Sanchez testified that surveillance officers informed him and his partner, Sergeant Orlando,[2] where Wilson traveled after the transaction, and they relocated their vehicle to observe him. Approximately "a minute" after receiving Wilson's description, Sanchez saw him walking with a man through a lot to the sidewalk on Chicago Avenue. Sanchez asked Wilson to approach the vehicle and he complied. Wilson told Sanchez his name and produced a picture identification. The officers did not immediately arrest Wilson because they were still conducting controlled narcotics purchases in the area.

¶ 18    On cross-examination, Sanchez stated that he could have patted down Wilson without arresting him but did not do so. Sanchez did not check Wilson for the prerecorded funds. Sanchez also did not see the transaction or participate in photo array or lineup identifications.

¶ 19    Forensic scientist Arthur Weavers testified that he weighed and tested the substance inventoried in connection with this case and determined that it was 1.1 grams of heroin.

¶ 20    In closing, the State argued that Wilson "is in the business of selling individually packaged baggies of heroin. *** The defendant's business was a well-oiled machine it seemed. He had an

---

[2]Sergeant Orlando's first name does not appear in the record on appeal.

individual on Homan just up the street from where he was flagging people." Defense counsel raised an unspecified objection during this statement, and the trial court overruled the objection. Defense counsel argued that the officers' identifications of Wilson were flawed, and Connolly's body camera footage did not corroborate the identifications because Wilson's face was not visible.

¶ 21    The trial court instructed the jury, in pertinent part, that it "should disregard questions and exhibits which were withdrawn or to which objections were sustained." The jury found Wilson guilty of delivery of a controlled substance.

¶ 22    Wilson filed a motion and supplemental motion for a new trial, arguing in relevant part that the trial court erred in overruling his first hearsay objection and denying his motion for a mistrial. Wilson also argued the trial court erred in overruling his objection to the State's comment in closing arguments describing Wilson's business as a "well-oiled machine," which invoked Connolly's hearsay testimony.

¶ 23    The trial court denied Wilson's motion, commenting that the initial ruling on the hearsay objection was proper and any error was "harmless" because the court gave a limiting instruction that the conversation was elicited for the effect on the listener rather than for the truth of the matter asserted. For the same reasons, the trial court stated that it did not err in denying Wilson's motion for a mistrial. Lastly, the trial court stated that it did not err in overruling Wilson's objection during closing arguments because the parties were allowed to argue based on the evidence and any reasonable inferences, and the prosecutor's statement was neither overly inflammatory nor prejudicial.

¶ 24    After a hearing, the trial court sentenced Wilson to eight years' imprisonment as a mandatory Class X offender due to previous convictions for delivery of a controlled substance and attempted murder. In pronouncing its sentence, the trial court commented that Wilson was on

probation at the time he committed the offense, so the minimum sentence was not appropriate as a lower sentence would depreciate the seriousness of the offense. Wilson did not file a motion to reconsider sentence.

¶ 25                                                II. ANALYSIS

¶ 26    On appeal, Wilson argues that the trial court erred by denying his motion for a mistrial where the State elicited prejudicial hearsay testimony regarding the content of Connolly's conversation with the unidentified man, to wit, "someone named Q was out there selling yellow and black," particularly when the unidentified man then led Connolly to Wilson. (As a reminder, Wilson's first name is Quentin.) Wilson contends that the trial court's ruling sustaining Wilson's second hearsay objection and instructing the jury to disregard the question and partial answer "came too late" to prevent the prejudicial inference that Wilson had been identified by a nontestifying party. Wilson posits that the identity of the person who sold drugs to Connolly was the core issue at trial, and, thus, he was denied a fair trial.

¶ 27    A trial court should grant a motion for mistrial if "an error of such gravity" occurred during the proceedings that it "infected the fundamental fairness of the trial, such that the continuation of the proceeding would defeat the ends of justice." *People v. Bishop*, 218 Ill. 2d 232, 251 (2006). Mistrial is warranted when the jury is so influenced that it could not be fair and impartial and the damage could not be cured by admonitions, and should only be granted "with the greatest caution, under urgent circumstances and for plain and obvious causes." *People v. Middleton*, 2018 IL App (1st) 152040, ¶ 29. "Our standard of review for motions for mistrial is whether the trial court abused its discretion; a court's decision will not be disturbed unless defendant was prejudiced by the testimony." *People v. McDonald*, 322 Ill. App. 3d 244, 250 (2001).

¶ 28    Evidentiary rulings are also within the trial court's sound discretion and are reviewed for an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). An abuse of discretion exists where "the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.*

¶ 29    Hearsay is an out-of-court statement offered to establish the truth of the matter asserted. *People v. Banks*, 237 Ill. 2d 154, 180 (2010). Hearsay is generally inadmissible because the declarant cannot be cross-examined. *People v. Yancy*, 368 Ill. App. 3d 381, 385 (2005). However, "[t]he admission of an out-of-court statement that is not offered to prove the truth of the matter asserted but rather to explain the investigatory procedure followed in a case is proper." *Banks*, 237 Ill. 2d at 181.

¶ 30    A police officer, thus, may testify about a conversation he had with an individual to explain his subsequent actions as part of an investigation. *People v. Hunley*, 313 Ill. App. 3d 16, 33 (2000). Nevertheless, this exception is narrow and limited. See *People v. Jones*, 153 Ill. 2d 155, 160-61 (1992) (explaining that if "the substance of the conversation would have gone to the very essence of the dispute"—whether the defendant was the person who committed the crime—then the statement would be inadmissible because it would inevitably go to prove the matter asserted); *People v. Gacho*, 122 Ill. 2d 221, 248-49 (1988) (noting a recognized distinction between eliciting the existence of a conversation and the substance of that conversation when determining what evidence can be used to show the course of police investigation); *People v. Cameron*, 189 Ill. App. 3d 998, 1004 (1998) (observing that a trial court must carefully assess out-of-court statements that purport to explain a course of police conduct to ensure that the statements do not include more information than is necessary to explain police conduct because the danger of misuse of such statements is great).

¶ 31    In other words, it is error to place the substance of the out-of-court statement into evidence beyond what is necessary to explain the officer's actions. *People v. Jura*, 352 Ill. App. 3d 1080, 1085 (2004). Our supreme court has held that such testimony may not gratuitously reveal the substance of the conversations. *People v. Henderson*, 142 Ill. 2d 258, 304 (1990). However, "the prompt sustaining of an objection, combined with a proper jury instruction to disregard the testimony, is typically sufficient to cure an error involving inadmissible hearsay." *People v. Risper*, 2015 IL App (1st) 130993, ¶ 46.

¶ 32    During Connolly's direct examination, the State questioned him regarding what the man on the porch said. Defense counsel objected on the basis of hearsay and the trial court overruled the objection, instructing the jury to consider the statement not for the truth of the matter asserted but only to show the conduct of the officer. At this point, no improper testimony was elicited, and the trial court gave an appropriate limiting instruction to the jury. See *People v. Simms*, 143 Ill. 2d 154, 174 (1991) (finding no error where a police officer's testimony regarding his conversation with the defendant's brother was admissible to show the officers' conduct and the court instructed the jury to consider the testimony for the limited purpose of explaining the officers' actions rather than the truth of the statement); see also *Jura*, 352 Ill. App. 3d at 1093 ("Absent a limiting instruction, it cannot be presumed the jury's use of the hearsay evidence was limited to nonhearsay purposes.").

¶ 33    When Connolly began testifying regarding the content of the conversation, informing the jury that the man told him "Q was out there selling yellow and black," defense counsel objected again and, in a sidebar, moved for a mistrial. The trial court denied the motion for mistrial but sustained the objection and instructed the jury to disregard the question and partial answer. In

closing, the State argued that Wilson's business was a "well-oiled machine," noting that he had a person flagging buyers on Homan Avenue.

¶ 34    We find the admission of the hearsay statement was erroneous. First, the State's elicitation of the hearsay statement from Connolly was plainly gratuitous, as it was unnecessary to establish Connolly's course of conduct. As our supreme court has cautioned before, testimony must not gratuitously reveal the content of conversations. See *Henderson*, 142 Ill. 2d at 304. Had the State wanted to establish that the man escorted Connolly to Wilson, it could have relied upon not only Connolly's testimony to that effect but upon the body camera footage, which did not contain audio, wherein a man clearly walks with Connolly to Wilson's location. The statement identifying "Q" as the seller of yellow and black, which the State does not dispute is a colloquialism for heroin and its packaging, was a clear reference to Wilson, whose first name is Quentin, and was entirely unnecessary to establish Connolly's course of conduct. We find that the only purpose for this hearsay testimony was to identify Wilson as a drug dealer, as his first name, atypically, begins with the letter "Q", not to show the course of conduct of the police.

¶ 35    The trial court sustained defense counsel's objection and instructed the jury to disregard the question and partial answer. But shortly after being instructed to disregard the testimony that "Q" was selling "yellow and black," the jury heard Connolly's testimony that he bought baggies wrapped in yellow and black tape from Wilson, baggies that contained heroin. Moreover, despite the trial court's instruction, the State further compounded the impact of the hearsay statement by obliquely referencing the improper hearsay testimony during closing argument where it commented that Wilson's drug sale business was a "well-oiled machine" because he had a flagger stationed on Homan Avenue directing drug buyers to Wilson.

¶ 36    Even though the trial court attempted "to mitigate the damage" from the hearsay statement by instructing the jury to disregard it, the State unmistakably reminded the jury of the objectionable hearsay testimony that "Q" was out there selling drugs immediately prior to deliberations. See *People v. Rivera*, 277 Ill. App. 3d 811, 820 (1996) (holding hearsay identification testimony to be reversible error despite the court's limiting instruction where the State referenced the hearsay in another question and closing argument). Thus, the limiting instruction did not cure the error.

¶ 37    However, we find that the introduction of the hearsay testimony was harmless error. "The admission of hearsay evidence is harmless error where there is no reasonable probability that the jury would have acquitted the defendant absent the hearsay evidence." *People v. Sims*, 192 Ill. 2d 592, 628 (2000) (quoting *People v. Nevitt*, 135 Ill. 2d 423, 44 (1990)). There is no such probability here. The State's witnesses testified that they were working as an undercover team to purchase narcotics from drug dealers. Connolly testified that he purchased heroin, later determined to be 1.1 grams, from Wilson using prerecorded funds, and observed Wilson's face clearly during the interaction. The interaction was captured by Connolly's body worn camera. Connolly identified Wilson from a photo array one hour later. Sandoval observed the interaction from his vehicle. After Connolly and Wilson separated, Connolly informed Sandoval that the transaction was "positive." Sandoval then described Wilson and his location to the rest of the team by radio. Sanchez testified that he observed Wilson "a minute" after receiving Sandoval's description, learned Wilson's name, and viewed his picture identification. Each officer identified Wilson in court.

¶ 38    The evidence against Wilson was overwhelming, so the erroneous admission of Connolly's hearsay testimony is harmless. See *People v. Becker*, 239 Ill. 2d 215, 240 (2010) (a reviewing court may find an error is harmless if the remaining evidence is overwhelming); see also *People v.*

*Shorty*, 408 Ill. App. 3d 504, 511-12 (2011) (the trial court erred in admitting hearsay and the limiting instruction did not cure the error; however, the error was harmless due to the overwhelming nature of the evidence). Consequently, we cannot say that "an error of such gravity" occurred such that the trial court abused its discretion in denying defendant's motion for mistrial. *Bishop*, 218 Ill. 2d at 251. As noted, the trial court's decision to deny a motion for mistrial will not be disturbed unless a defendant is prejudiced by the improper testimony and, for the reasons we have explained, that did not happen here because the evidence of Wilson's guilt was overwhelming. See *McDonald*, 322 Ill. App. 3d at 250.

¶ 39     The dissent appears to equate the erroneous admission of hearsay testimony to the type of error subject to second-prong plain error review (*infra* ¶ 51), and asserts that we have not "determine[d] whether [Wilson's] right to a fair trial was compromised" (*infra* ¶ 52). Wilson's argument on appeal is that the trial court erred by denying his motion for a mistrial where the State elicited prejudicial hearsay testimony regarding the content of Connolly's conversation with the unidentified man, and trial court's ruling sustaining Wilson's second hearsay objection and instructing the jury to disregard the question and partial answer "came too late" to prevent the prejudicial inference that Wilson had been identified by a nontestifying party. The dissent does not meaningfully dispute that the erroneous admission of hearsay testimony is subject to a harmless error analysis. See *In re Jovan A.*, 2014 IL App (1st) 103835, ¶ 37.

¶ 40     The dissent also draws some questionable conclusions from the record. First, the dissent asserts that "Detective Connolly's testimony was unable to otherwise establish the person's identity because his face was hidden by a hood." *Infra* ¶ 53. But Detective Connolly testified that he had a clear, unobstructed view of Wilson's face during the course of the purchase. Connolly testified that when he first encountered Wilson, Connolly was within arm's reach of Wilson and

could clearly see his face. Connolly also testified that after Wilson reemerged from the yard (*supra* ¶ 9), Connolly made contact with Wilson again and was able to view his face unobstructed. Whether or not the body cam footage depicted Wilson's face does not alter the fact that Connolly testified that he saw defendant's face, selected Wilson's photograph from a photo array, and made an in-court identification of Wilson as the person from whom he purchased the narcotics.

¶ 41    Second, the dissent asserts that "the pre-recorded funds used to make the transaction were not recovered when defendant was arrested mere minutes following the transaction." *Infra* ¶ 53. But the record does not suggest that Wilson was arrested "mere minutes" after the transaction. The officers testified at trial that after Connolly made the purchase, he left the area and returned to his vehicle. Along the way, he told Sandoval "positive transaction," and then from his vehicle radioed a description of Wilson to his team. Sandoval, after hearing from Connolly, observed Wilson until he lost sight of him and then observed Sanchez and Orlando speaking to Wilson from inside their vehicle. Sanchez and Orlando asked Wilson for his name and identification but did not arrest or search Wilson at that time. The entire process was described as a "buy walk" in which officers gather information and let the suspect leave rather than make an arrest on the spot, which might jeopardize future undercover narcotics purchases in the area.

¶ 42    For all the above reasons, we find that the circuit court's erroneous admission of hearsay testimony was harmless where the evidence of Wilson's guilt was overwhelming.

¶ 43                                   III. CONCLUSION

¶ 44    Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 45    Affirmed.

¶ 46    JUSTICE ODEN JOHNSON, dissenting:

¶ 47    I respectfully dissent from the majority's position in this case. Here, while the majority finds that "the State gratuitously introduced hearsay identification testimony that was not cured by the trial court's limiting instruction," it nevertheless concludes that the error was harmless because the evidence of defendant's guilt was "overwhelming." I disagree with the conclusion that the error was harmless because defendant did not receive a fair and impartial trial; nor, do I believe that the evidence of defendant's guilt was overwhelming.

¶ 48    Defendant's appeal was from the denial of his motion for mistrial based on the State's errors. As noted by the majority, our standard of review for motions for mistrial is whether the trial court abused its discretion; a court's decision will not be disturbed unless the defendant was prejudiced by the testimony. *People v. McDonald*, 322 Ill. App. 3d 244, 250 (2001). However, if properly admitted evidence establishes an element of the crime, the admitted evidence is harmless. *Id*. If a trial judge properly sustains a timely objection and instructs the jury to disregard the evidence, the error is usually cured. *Id*.

¶ 49    In this case, the majority specifically found that admission of the hearsay statement from Detective Connolly was erroneous, because it "was plainly gratuitous as it was unnecessary to establish Connolly's course of conduct," and the "only purpose for this hearsay testimony was to identify [defendant] as a drug dealer, as his first name, atypically, begins with the letter 'Q.' " *Supra* ¶ 34. Additionally, the majority noted that the trial court sustained defense counsel's objection and instructed the jury to disregard the question and partial answer, but shortly after being instructed to disregard the testimony that "Q" was selling "yellow and black," the jury heard Detective Connolly's testimony that he bought baggies wrapped in yellow and black tape from defendant, that were subsequently found to contain heroin. The majority further found that, despite

the trial court's instruction, the State "further compounded the impact of the hearsay statement by obliquely referencing the improper hearsay testimony during closing argument. Specifically, the State commented that [defendant]'s drug sale business was a 'well-oiled machine' because he had a flagger stationed on Homan Avenue directing drug buyers to Wilson." The majority then concluded that even though the trial court attempted to mitigate the damage from the hearsay statement by instructing the jury to disregard it, the State unmistakably reminded the jury of the objectionable hearsay testimony immediately prior to deliberations, thus the limiting instruction did not cure the error. I agree with each of these conclusions.

¶ 50     However, the majority goes on to conclude that the error was harmless because the evidence of defendant's guilt was overwhelming, which I cannot agree with under the circumstances of this case. I believe that the State's errors were not harmless and that they in fact prejudiced defendant and impacted his ability to receive a fair and impartial trial.

¶ 51     Under both the United States and Illinois Constitutions, due process guarantees a defendant a fair and impartial trial. *People v. Smith*, 2017 IL App (1st) 143728, ¶ 44; U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. A trial court must take appropriate measures under the circumstances to ensure that the defendant receives a trial before a fair and impartial jury. *Smith*, 2017 IL App (1st) 143728, ¶ 60. Our supreme court has previously concluded that it is improper for a prosecutor to utilize closing argument simply to inflame the passions or the prejudices of the jury or to forge an "us-versus-them" mentality that is inconsistent with the criminal trial principle that a jury fulfills a nonpartisan role, under the presumption that a defendant is innocent until proven guilty. *People v. Wheeler*, 226 Ill. 2d 92, 129 (2007).

¶ 52     Our supreme court has also held that we can invoke the harmless error doctrine to dispose of claims of error that have a *de minimus* impact on the outcome of the case. *People v. Blue*, 189

Ill. 2d 99, 138 (2000). Yet prejudice to a defendant's case is not the sole concern that drives such analysis; a criminal defendant, whether guilty or innocent, is entitled to a fair, orderly and impartial trial conducted according to law. *Id.* When a defendant's right to a fair trial has been denied, this court must take corrective action to preserve the integrity of the judicial process. *Id.* To determine whether a defendant's right to a fair trial has been compromised, we employ the same test used when applying the second prong of the plain error test. *Id.* We ask whether a substantial right has been affected to such a degree that we cannot confidently state that defendant's trial was fundamentally fair. *Id*. Most importantly, the court will act on plain error regardless of the strength of the evidence of the defendant's guilt. *Id.* (citing *People v. Green*, 74 Ill. 2d 444, 455 (1979)).

¶ 53   Here, the majority concluded that the introduction of the hearsay evidence (and by association, the State's improper comments during closing argument) was harmless error and went on to recount the facts that it determined to be overwhelming evidence of defendant's guilt. I submit that the majority failed to determine whether defendant's right to a fair trial was compromised despite its belief about the weight of evidence presented.

¶ 54   Here, the State elicited hearsay testimony regarding the content of a conversation between Detective Connolly and the man on the porch, which a portion of that content was presented to the jury prior to defense counsel's objection and subsequent motion for mistrial. That elicited hearsay, namely that "Q was out there selling yellow and black," unmistakably went to the very nature of the offense for which defendant was on trial, whether he was in fact guilty of selling heroin on that particular date. This testimony created a positive identification of defendant as it was presumably made by a friend or associate of defendant's, whereas Detective Connolly's testimony was unable to otherwise establish the person's identity because his face was hidden by a hood. Nor did the body cam footage conclusively establish the identity of the person who handed Detective Connolly

something as there was no face discernable on the footage. No other witness who testified was able to clearly establish that defendant was the person in the alley that day and the improper hearsay testimony served but to bolster the State's case by providing a nexus between the person selling drugs and defendant. Further, and although there are cases to the contrary, the pre-recorded funds used to make the transaction were not recovered when defendant was arrested mere minutes following the transaction. There was also no description of anything in the person's clothing that would make him readily identifiable per the testimony. Thus, we are left with Detective Connolly's hearsay testimony about what the man on the porch said which provided the nexus between defendant and the man in the alley. As the majority noted, the State doubled down on this connection by arguing in closing that defendant had a well-oiled machine with a flagger stationed to direct customers to him, which again, went to the very essence of the proof needed to convict defendant. In finding that the trial court's limiting instruction did not cure the error, I am at a loss as to how this could be considered a fair and impartial trial when the State all but directed the verdict by eliciting this improper testimony and reinforcing it in closing.

¶ 55    Based on the circumstances presented here, I would find that defendant did not receive a fair and impartial trial by jury and that the evidence was not so overwhelming to render the State's errors harmless, especially when the identification of defendant was accomplished primarily through the inadmissible hearsay evidence. I would therefore reverse the trial court's denial of defendant's mistrial motion and remand for a new trial.